**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41158**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Opinion No. 43 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 20, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSE GUADALUPE PEREZ-JUNGO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Kimberly E. Smith, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Jose Guadalupe Perez-Jungo appeals from his judgment of conviction for possession of a controlled substance. Specifically, he alleges that the district court erred in denying his motion to suppress based on the extension of the duration of an investigative detention. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

The following facts were adduced through testimony at the motion hearing and were set forth in the district court's order denying Perez-Jungo's motion to suppress. An officer came upon Perez-Jungo's vehicle parked to the side of a rural gravel road at approximately 1:36 a.m. As the officer approached Perez-Jungo's vehicle, the officer activated his patrol vehicle's overhead emergency lights. The officer testified that his initial reasons for approaching the vehicle were his concern that the vehicle was abandoned, the vehicle was stolen, the driver was

1

in need of assistance, or the driver may have been involved in recent vandalisms of cell towers in the area. After pointing his spotlight at the driver's side mirror, the officer observed an individual in the vehicle. The officer approached the vehicle and asked Perez-Jungo what he was doing. Perez-Jungo responded that he was waiting for a friend and that someone had told him there was a potential job site nearby. The officer noted that Perez-Jungo's eyes were bloodshot and glassy. He asked Perez-Jungo if he had been drinking and Perez-Jungo said he had not. The officer also noticed a Santa Muerte statuette on the dashboard of Perez-Jungo's vehicle, which the officer testified was the patron saint of drug traffickers.[1] The officer then requested Perez-Jungo's driver's license and information, returned to his patrol vehicle and ran a status check for active warrants, which came back negative. He was also able to determine that the vehicle was not stolen. The officer requested backup, which arrived approximately ten minutes later, and a canine unit, which never arrived. Perez-Jungo was told to exit his vehicle and was questioned. During questioning, other officers shined flashlights into the vehicle's windows. The officers eventually saw what appeared to be drug paraphernalia and a controlled substance, leading to a search of the vehicle. The items tested presumptively positive for controlled substances.

Perez-Jungo was charged with possession of a controlled substance (cocaine), I.C. § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A(1). The state subsequently amended the information to charge Perez-Jungo with possession of methamphetamine instead of cocaine.

Perez-Jungo filed a motion to suppress evidence resulting from what he alleged to be an unlawful detention. Specifically, Perez-Jungo asserted that the officer had unlawfully extended the duration of the stop without reasonable suspicion and that he was subjected to a custodial interrogation prior to being advised of his *Miranda* rights.[2] The district court granted Perez-Jungo's motion with regard to the *Miranda* issue and denied the motion with regard to the

---

[1]    Perez-Jungo attempts to introduce new evidence on appeal regarding Santa Muerte. This information is not contained in the record and was not provided to the district court for consideration. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Johnson*, 148 Idaho 664, 670, 227 P.3d 918, 924 (2010); *State v. Mitchell*, 124 Idaho 374, 376 n.1, 859 P.2d 972, 974 n.1 (Ct. App. 1993). As a result, the introduction of this information on appeal is improper and will be disregarded.

[2]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).

alleged unlawful extension of the stop.[3] The district court ruled that the officer lawfully extended the investigative detention based on the officer's reasonable suspicion that Perez-Jungo either had been or was about to be involved in illegal drug activity or impaired driving. Specifically, the district court found that the totality of the circumstances--the remote location, the late hour, Perez-Jungo's questionable explanation for why he was there, his bloodshot and glassy eyes, the Santa Muerte statuette, and the officer's training and experience in recognizing the significance of the statuette--provided reasonable suspicion to support further investigation.

Pursuant to a plea agreement, Perez-Jungo pled guilty to possession of methamphetamine, the state dismissed the possession of drug paraphernalia charge, and Perez-Jungo preserved his right to appeal the partial denial of his motion to suppress. The district court sentenced Perez-Jungo to a unified term of five years, with a minimum period of confinement of two years, but suspended the sentence and placed Perez-Jungo on probation for three years. Perez-Jungo appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Perez-Jungo concedes that his initial contact with the officer and the temporary detention while the officer performed a status check on Perez-Jungo's driver's license were lawful based on the officer's community caretaking function. He contends, however, that this initially lawful detention was unlawfully prolonged after the initial purposes for the stop were resolved and any

---

[3]     The state does not challenge the district court's ruling on the *Miranda* issue on appeal.

initial suspicion dispelled.[4] He also asserts that the scope of the investigation was not reasonably related to one of the subsequent justifications for his detention. Consequently, he contends, the open-view discovery of the controlled substance occurred during an unlawful detention and the district court erred in denying his motion to suppress that evidence.

## A.        Reasonable Suspicion

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000).[5] An investigative detention is permissible if it is based upon specific articulable facts which justify reasonable suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 26 (1968); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

---

[4]      Although Perez-Jungo argues that the officer was not justified in extending the initial investigative detention based on the officer's community caretaking function, the state does not assert this as a basis for finding the continued detention lawful. Accordingly, we address only the arguments concerning whether reasonable suspicion was present to justify extension of the initially lawful investigative detention.

[5]      The district court found that Perez-Jungo's initial detention occurred when the officer activated the overhead emergency lights on his patrol vehicle after parking behind Perez-Jungo's vehicle. *See State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002) (holding that an officer effectuated a seizure of the occupants of a vehicle when he activated the overhead emergency lights of his patrol vehicle); *State v. Mireles*, 133 Idaho 690, 694, 991 P.2d 878, 880 (Ct. App. 1999) (finding that use of emergency lights created a *de facto* detention based on I.C. § 49-625 and I.C. § 49-1404); *but see State v. Willoughby*, 147 Idaho 482, 487, 211 P.3d 91, 96 (2009) (distinguishing *Mireles* and holding that the use of overhead emergency lights is a significant factor when considering the totality of the circumstances, but declining to hold that it constitutes a *de facto* seizure resulting from I.C. §§ 49-625 and 49-1404 when the driver is already stopped before activation of the lights). The state does not dispute this finding, so for the purposes of our analysis, we assume--without deciding--that Perez-Jungo was detained upon the officer's activation of his patrol vehicle's overhead emergency lights.

We agree with Perez-Jungo's assertion that the officer's initial purposes for approaching and detaining Perez-Jungo were quickly dispelled.  Indeed, once the officer shined his spotlight on the vehicle and was able to see that there was an occupant inside, there was no longer a concern that the vehicle was abandoned.  After making contact with Perez-Jungo, the officer was quickly able to determine that Perez-Jungo was not in need of assistance; moreover, there was no indication that Perez-Jungo had been involved in the recent vandalisms in the area.  Following the check of Perez-Jungo's license and registration, the officer was able to determine that the vehicle was not stolen.

However, this is not dispositive.  The purpose of a stop is not fixed at the time the stop is initiated.  *Parkinson*, 135 Idaho at 362, 17 P.3d at 306.  Any routine investigative detention might turn up suspicious circumstances which could justify an officer asking questions unrelated to the initial purpose for the stop.  *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990).  Such unrelated inquiries, if brief, do not necessarily exceed the scope of the initial detention and violate a detainee's Fourth Amendment rights.  *Parkinson*, 135 Idaho at 362, 17 P.3d at 306.  Moreover, an officer's observations and general inquiries, and the events succeeding the stop, may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer.  *Myers*, 118 Idaho at 613, 798 P.2d at 458.  Indeed, a detention initiated for one investigative purpose may disclose suspicious circumstances that justify expanding the investigation to other possible crimes.  *State v. Brumfield*, 136 Idaho 913, 916, 42 P.3d 706, 709 (Ct. App. 2001).  Thus, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify reasonable suspicion that the detained person is, has been, or is about to engage in criminal activity.  *State v. Gomez*, 144 Idaho 865, 869, 172 P.3d 1140, 1144 (Ct. App. 2007).

Accordingly, our inquiry is directed at determining whether the officer had reasonable suspicion, upon resolution of the initial justifications for the stop, to continue the detention to investigate other possible crimes.[6]  The reasonableness of the suspicion must be evaluated upon

---

[6]   For purposes of this inquiry, we agree with the district court's determination that reasonable suspicion must have existed prior to the arrival of additional officers and the initial officer's request that Perez-Jungo exit the vehicle.  Indeed, all of the officer's justifications for the initial stop were dispelled after contacting Perez-Jungo and upon verification from dispatch that Perez-Jungo's license was valid, he had no active warrants, and the vehicle was not stolen.

the totality of the circumstances at the time of the stop. *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009); *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Terry*, 392 U.S. at 27; *Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210; *State v. Grigg*, 149 Idaho 361, 363, 233 P.3d 1283, 1285 (Ct. App. 2010). An officer may draw reasonable inferences from the facts in his or her possession to support reasonable suspicion, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Here, although the officer's initial reasons for making contact with Perez-Jungo were quickly resolved, the officer became aware of objective facts during the course of his initial investigation that caused him to subsequently suspect Perez-Jungo of involvement in either impaired driving or illegal drug activity. Perez-Jungo argues that the extension of his detention could only be justified by reasonable suspicion that a *specific* crime had been committed. In other words, he contends that there must have been objective facts that provided reasonable suspicion of at least one of the specific crimes the officer suspected Perez-Jungo of having committed. As a result, he argues at length that the facts of this case were not sufficient to provide reasonable suspicion of impaired driving or illegal drug activity separately, meaning that the officer did not have reasonable suspicion to prolong the duration of the initially lawful detention.

Perez-Jungo misapprehends the applicable standard. Just as with probable cause to search a vehicle, reasonable suspicion does not require a belief that any *specific* criminal activity is afoot to justify an investigative detention; instead, all that is required is a showing of objective and specific articulable facts giving reason to believe that the individual has been or is about to be involved in *some* criminal activity. *Cf. State v. Newman*, 149 Idaho 596, 600-01, 237 P.3d 1222, 1226-27 (Ct. App. 2010) (noting this standard for probable cause); *see also United States v. Guardado*, 699 F.3d 1220, 1225 (10th Cir. 2012) (stating that direct evidence of a specific, particular crime is unnecessary for an investigatory stop); *United States v. Pack*, 612 F.3d 341,

This occurred approximately five minutes before the second officer arrived. As a result, any observations made thereafter cannot contribute to the totality of the circumstances.

357 (5th Cir. 2010) (noting that officers need not observe the equivalent of direct evidence of a particular specific crime in order to detain a lawfully stopped individual to investigate further so long as there is reasonable suspicion of some criminal activity). This analysis is based on the totality of the circumstances, meaning that we look at the whole picture, including those facts that may support suspicion of one crime but not another. Even if there is not sufficient reasonable suspicion of any *specific* crime, there may still be reasonable suspicion that *some* criminal activity is afoot, which is all that is required to extend an investigative detention. *See, e.g.*, *United States v. Arvizu*, 534 U.S. 266, 272 (2002) (noting that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion that criminal activity may be afoot); *Brown v. Texas*, 443 U.S. 47, 52 (1979) (noting that an officer must have reasonable suspicion, based on objective facts, that the individual is involved in criminal activity).

The circumstances known to the officer here provided reasonable suspicion to believe that some criminal activity was afoot. The officer testified that, after the concerns justifying his initial contact with Perez-Jungo had been resolved, he suspected that Perez-Jungo might be involved in impaired driving or illegal drug activity. Specifically, the officer came upon Perez-Jungo's vehicle parked on a gravel road in a remote area late at night. Although this was insufficient alone to create reasonable suspicion, officers are not required to ignore the suspicious nature of relevant surrounding circumstances, such as location or time. *See, e.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that police may consider location, even when not in a high-crime area, when determining if reasonable suspicion exists); *State v. McAfee*, 116 Idaho 1007, 1010, 783 P.2d 874, 877 (Ct. App. 1989) (agreeing that "unusual activities at unusual hours" can contribute to establish reasonable suspicion, but noting that citizens do not become prospective detainees because they lawfully drive and park late at night). The officer also observed that Perez-Jungo had bloodshot, glassy eyes. Again, the presence of bloodshot and glassy eyes is not alone sufficient to provide reasonable suspicion. *Grigg*, 149 Idaho at 364, 233 P.3d at 1286. However, it nonetheless supports suspicion of both intoxication and illegal drug activity. *See State v. Sheldon*, 139 Idaho 980, 985, 88 P.3d 1220, 1225 (Ct. App. 2003) (noting that glassy, bloodshot eyes not caused by alcohol consumption can contribute to reasonable suspicion of illegal drug activity).

Indeed, few additional facts are needed beyond bloodshot and glassy eyes to provide reasonable suspicion of impaired driving or illegal drug activity. *See Grigg*, 149 Idaho at 364,

7

233 P.3d at 1286 (finding reasonable suspicion to support an extended detention where defendant had bloodshot and glassy eyes, reddening of the conjunctiva of his eyes, and eyelid tremors). Although Perez-Jungo denied having consumed alcohol or drugs recently, it was reasonable for the officer to believe Perez-Jungo was being untruthful, especially in light of the questionable explanation Perez-Jungo provided for what he was doing. He asserted that he was waiting to meet with a friend and look into possible employment in the area. However, as noted by the district court, Perez-Jungo was in a remote area with no businesses or residences nearby and it was late at night, making his explanation unlikely. Finally, the officer observed a Santa Muerte statuette on the dashboard of Perez-Jungo's vehicle. The officer testified that, based on his training and experience, Santa Muerte is a patron saint for drug traffickers.[7]

Based on the totality of these circumstances, the officer had reasonable suspicion to detain Perez-Jungo for further investigation. Taken individually, none of these facts would be sufficient to provide reasonable suspicion that Perez-Jungo was, had been, or was about to be involved in criminal activity. However, when taken together and viewed as a whole picture, these facts support extension of the initially lawful detention to further investigate potential crimes involving impaired driving and illegal drug activity. *See Brumfield*, 136 Idaho at 917, 42 P.3d at 710 (noting that facts susceptible to innocent explanations separately may still warrant further investigation when taken together). The district court did not err in finding that the extension of Perez-Jungo's detention was supported by reasonable suspicion.

**B. Scope of the Investigation**

Perez-Jungo also asserts that the scope of the investigation was not reasonably related to one of the alleged justifications for his prolonged detention. An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its

---

[7] Perez-Jungo attempts to argue for the first time on appeal that the Santa Muerte statuette cannot be used to support reasonable suspicion. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Accordingly, we do not address this issue.

duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Id.*; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305.

Perez-Jungo argues only that the officer failed to perform field sobriety tests or otherwise investigate him for impaired driving, and thus the officer did not use the least intrusive means to investigate whether Perez-Jungo was driving under the influence. *See State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999) (finding field sobriety tests to be the least intrusive means reasonably available to verify or dispel an officer's suspicion in a short period of time that a driver is driving under the influence). Although we look at the intensity of the investigative measures used, the primary factor that may render a detention unreasonable is its duration. *United States v. Sokolow*, 490 U.S. 1, 11 (1989); *State v. Stewart*, 145 Idaho 641, 646, 181 P.3d 1249, 1254 (Ct. App. 2008). Indeed, the reasonableness of an officer's extended detention of a suspect does not turn on the availability of less intrusive investigatory techniques. *Sokolow*, 490 U.S. at 11. Such a rule would require courts to indulge in "unrealistic second-guessing" and would unduly hamper responsive investigative decision making. *Id.*; *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Thus, our statement in *Ferreira* did not mean that the *only* permissible means for investigating impaired driving was through field sobriety tests. Instead, we simply held that field sobriety tests would not render an investigative detention on suspicion of impaired driving unreasonable. *See Ferreira*, 133 Idaho at 483, 988 P.2d at 709. Other investigative techniques are permissible if reasonable under the circumstances. *See id.* (noting that the "least intrusive means *reasonably* available" should be used); *State v. Martinez*, 129 Idaho 426, 431, 925 P.2d 1125, 1130 (Ct. App. 1996) (finding that "the use of the drug-detection dog was *one* of the least intrusive means available) (emphasis added). However, Perez-Jungo does not argue that the techniques used--continued questioning and inspecting his vehicle with flashlights--were unreasonable under the circumstances.

Moreover, there is no requirement that the officer pursue to conclusion investigation of each crime he suspected Perez-Jungo of having committed. The officer developed reasonable suspicion that Perez-Jungo was involved in either impaired driving or illegal drug activity, and it was entirely reasonable for the officer to limit or abandon the impaired driving investigation to pursue the investigation of illegal drug activity, as the circumstances supported reasonable suspicion of either crime. Perez-Jungo does not assert that the scope of the investigation was not

9

reasonably related to suspicion of illegal drug activity. As a result, the scope of the investigation did not render his extended detention unreasonable.

## IV.

## CONCLUSION

Perez-Jungo has failed to demonstrate that the district court erred in denying his motion to suppress based on its finding that the officer had reasonable suspicion to justify extending the duration of his investigative detention. Moreover, the scope of the investigation was not unreasonable. Accordingly, we affirm Perez-Jungo's judgment of conviction for possession of a controlled substance.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**