**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51434**

| | |
|---|---|
| STATE OF IDAHO,<br><br>      Plaintiff-Respondent,<br><br>v.<br><br>SARAH JANEL JOHN,<br><br>      Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Filed:  June 5, 2025**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Roger B. Harris, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Sarah Janel John appeals from the district court's denial of her motion to suppress and her judgment of conviction.  John argues the district court erred in denying her motion to suppress because the deputy lacked reasonable suspicion and unlawfully prolonged the stop.  The State argues the deputy did not unlawfully extend the stop because the driver was unlicensed and unauthorized to drive the rental car, and the purpose of the stop was not completed until the authorized driver could be determined.  The State also contends the circumstances created reasonable suspicion to investigate possible drug crimes.  For the reasons set forth below, the district court's denial of the motion to suppress and John's judgment of conviction are affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Deputy McBride was working patrol duties when he observed a car suddenly slow down and go "way less than the speed limit" after the driver saw the patrol vehicle. Deputy McBride observed the four occupants attempting to conceal themselves from view by sinking lower in their seats and reclining their seats behind the pillars of the car. Deputy McBride began following the car, which crossed the center line two or three times. Deputy McBride then initiated a traffic stop.

After making contact with the driver, Deputy McBride requested the driver's identification, registration, and insurance. The driver provided an Arizona identification card and a rental agreement for the car, but did not provide a driver's license because he did not have one. Deputy McBride asked the driver to step out of the car to speak with the deputy and to accompany the deputy back to the patrol vehicle. Deputy McBride then invited the driver to sit in the passenger seat of the patrol vehicle while the deputy ran the driver's information and the information on the rental car through dispatch. The driver followed the deputy to the patrol vehicle, opened the front passenger door, sat in the front passenger seat, and closed the door. Deputy McBride asked the driver questions about the car rental agreement and who the verified driver on the rental agreement was; neither the driver, nor anyone in the car, had rented the car and the driver could only identify the person who rented the car by a first name. Deputy McBride testified that the driver's demeanor was guarded, with his arms crossed and his body facing away from the deputy, which the deputy described as "an abnormal body behavior." Deputy McBride asked about their travel plans and the driver indicated they started in Phoenix and drove through Washington but could not specify where in Washington beyond "the river." The driver said they were in Washington for thirty to sixty minutes, which did not make sense to Deputy McBride. Deputy McBride asked if there were drugs, weapons, or large amounts of currency in the car; the driver indicated there was between $6,000 and $8,000 in the car from his job as a tile worker. Deputy McBride issued a written warning to the driver and asked the driver for consent to search the car; the driver consented.

Deputy McBride approached the rental car and could see the three remaining passengers. John was sitting behind the driver's seat with a bag between her legs. Visible in John's bag was a can of butane gas and a small straw-like object. Deputy McBride asked each passenger to step out of the car and asked each passenger if he could search their respective bag; every passenger gave consent to search their respective bag. In John's bag, Deputy McBride found the can of butane

2

gas and the small straw-like object known as a "tooter," used to ingest drugs, that the deputy saw when he approached the car. Deputy McBride searched the trunk, where he located a zipped black bag containing a gun and items identifying John.

John was charged by information with four counts: (1) felony possession of a controlled substance with intent to deliver (fentanyl), Idaho Code § 37-2732(a)(1)(A) (Count I); (2) felony possession of a controlled substance (methamphetamine and/or amphetamine), I.C. § 37-2732(c)(1) (Count II); (3) possession, introduction or removal of certain articles into or from correctional facility (fentanyl), I.C. §§ 18-2510(3), 19-2520F (Count III), and; (4) unlawful possession of a firearm, I.C. § 18-3316 (Count IV). Part II of the information charged John as a persistent violator, I.C. § 19-2514, based on three prior felony convictions. John filed a motion to suppress, arguing that the driver was coerced into giving consent to search the car and the stop was unreasonably extended in violation of the Fourth Amendment to the United States Constitution after the written warning was issued. John also argued that the failure to record traffic stops by the sheriff's office violates due process and the introduction of contraband into a correctional facility charge is unconstitutional and violates a defendant's right to remain silent.

The district court held a hearing on the motion to suppress, orally denying the motion at the conclusion of the hearing. Pursuant to a plea agreement, John agreed to plead guilty to Count I, with the persistent violator enhancement, and the State agreed to dismiss Counts II, III, and IV. John retained her right to appeal the denial of the motion to suppress. John appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

## III.

## ANALYSIS

John does not challenge the consensual nature of the vehicle search, that Deputy McBride's observation of the butane torch and tooter in her purse justified a search of the car, or that John's arrest would have resulted in a search of her person, revealing additional controlled substances. John argues the district court erred in denying her motion to suppress the evidence found in the rental car because Deputy McBride unlawfully prolonged the detention after the purpose of the stop had concluded. "Mindful" of the district court's finding that the deputy had reasonable suspicion to extend the stop, John contends the deputy's request to search the car while the driver was in the patrol vehicle and after the written warning was issued was an unlawful extension of the stop. John also argues Deputy McBride's suspicions were based on pretextual observations and were not sufficient to create reasonable suspicion to justify an investigative search. The State argues the district court correctly determined the request for consent to search did not unlawfully extend the stop because the driver was unlicensed and unauthorized to drive the rental car, and therefore, the stop was not completed with the warning. The State also contends the totality of the circumstances created reasonable suspicion to investigate possible drug crimes.

A traffic stop by a deputy constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, a deputy may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the deputy. *Id.* A deputy may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the deputy's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). A detention which is initially justified as a traffic stop can be extended beyond the mission of that traffic stop if the deputy develops reasonable suspicion of

4

other potential criminal activity. *State v. Perez-Jungo*, 156 Idaho 609, 614-15, 329 P.3d 391, 396-97 (Ct. App. 2014).

The district court found the initial traffic stop was lawful based on Deputy McBride's observation of traffic violations and the validity of the initial stop is not contested on appeal. Next, the district court found that the deputy's observation of the driver's physical demeanor, nonsensical explanation of a trip to an unknown place in Washington, lack of a driver's license, lack of knowledge about the renter of the car, and the cash in the car created reasonable suspicion to investigate potential criminal activity. The district court concluded the drug investigation was independent of the traffic stop and, based on what the deputy learned during the traffic stop, could lawfully continue after the conclusion of the traffic stop. Next, the district court concluded that the driver voluntarily consented to the search of the rental car. Finally, the district court concluded that, in addition to the driver's consent to search the car, Deputy McBride had an additional basis to search the car once he saw the butane torch and the tooter in John's purse when he approached the car. John admitted the purse belonged to her and consented to a search of the purse. The district court determined that, based on the circumstances, Deputy McBride lawfully arrested John and a search incident to the arrest would have revealed the controlled substances she had on her person. The district court found the stop was not unlawfully extended and the subsequent search was not illegal. We agree.

John only challenges the district court's conclusion that there was reasonable suspicion to justify the investigation into potential criminal activity independent of the traffic violations. The district court did not err in concluding that the additional information learned by Deputy McBride during the course of the traffic stop provided reasonable suspicion of potential criminal activity, which justified the continued detention of the driver. During the initial, lawful detention of the driver for the traffic violations, Deputy McBride learned the driver was unlicensed; was unable to provide the full name on the rental agreement; was unable to provide details regarding the reasons and duration of the visit to Washington state; and had a large amount of cash in the car but did not know the exact amount. The district court correctly concluded that these facts, as articulated by Deputy McBride, gave rise to a reasonable belief the driver had been or was about to be involved in criminal activity, justifying further detention to investigate the ownership of the rental car and any other potential criminal activity.

5

The totality of circumstances supports the district court's conclusion that Deputy McBride had a lawful reason to continue the stop because reasonable suspicion of criminal activity was established. The district court did not err in denying John's motion to suppress.

## IV.

## CONCLUSION

The district court did not err in denying John's motion to suppress because there was reasonable suspicion to continue the detention for further investigation; therefore, there was no unlawful extension of the stop. The district court's denial of the motion to suppress and John's judgment of conviction are affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.