809 P.2d 522

STATE of Idaho, Plaintiff–Respondent,

v.

**Wayne Miles EMORY,
Defendant–Appellant.**

No. 17944.

Court of Appeals of Idaho.

March 6, 1991.

Petition for Review Denied
May 10, 1991.

David R. Samuelson, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), for plaintiff-respondent.

### SUBSTITUTE OPINION ON REHEARING

The Court's prior opinion dated August 16, 1990, is hereby withdrawn.

SWANSTROM, Judge.

Wayne Emory stands convicted of felony driving while under the influence of alcohol. I.C. §§ 18–8004, –8005. The sole issue, reserved by a conditional guilty plea, is whether the arresting officer had a reasonable and articulable suspicion justifying his stop of Emory's vehicle. We hold that he did not.

While on patrol duty in the north end of Boise at approximately 2:40 a.m. on a Sunday morning, an officer of the Boise Police Department was stopped on North Thirteenth Street at a red light. Ahead of him was a vehicle occupied by only one person, Wayne Emory. When the light turned green, Emory's vehicle failed to move for five to six seconds. The officer followed Emory's vehicle, which proceeded correctly through another green light. On the next block of Thirteenth Street, the available road space became narrower due to a long line of parked vehicles. The officer observed Emory driving straight but very close to the parked vehicles. The officer then decided to stop Emory and he turned on his overhead lights.

When the officer approached Emory in his vehicle, and asked if he had been drinking that night, Emory admitted that he had consumed four or five beers. The officer noticed an odor of alcohol on Emory's breath. Upon the arrival of two other police officers, field sobriety tests were administered. Emory failed them. He was arrested, and, because he had pled guilty to or was found guilty of driving while intoxicated on two previous occasions, he was charged with felony driving under the influence. I.C. §§ 18–8004, –8005. He entered a plea of not guilty and filed a motion to suppress the results of the field sobriety tests on the ground that the stop had been invalid. After a hearing, the district court denied the motion, and Emory entered a conditional plea of guilty. I.C.R. 11(a)(2). He was placed on probation with special conditions, and judgment was withheld for three years. This appeal followed.

■ Our standard of review is bifurcated. We defer to the lower court's findings of fact when supported by substantial evidence. However, we exercise free review over the lower court's determination of whether constitutional requirements were satisfied, in light of the facts found. *State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986).

In the present case, the Fourth Amendment to the United States Constitution re-

quires any investigative stop to be based upon reasonable and articulable suspicion. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The United States Supreme Court, in *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), held that a traffic stop constitutes a seizure under the Fourth Amendment of the Constitution. The Court went on to hold that since the Fourth Amendment prohibits unreasonable seizures, a traffic stop must be supported by reasonable and articulable suspicion that the vehicle is being driven contrary to the traffic laws or that either the vehicle or an occupant is subject to detention in connection with violation of other laws. *Id.*

The state contends that the record shows the officer had reason to suspect that Emory was driving under the influence. In his preliminary hearing testimony, the officer enunciated the factors that led to his suspicion: the slowness of Emory's response to the traffic signal; the closeness of Emory's vehicle to other vehicles parked on the street; and the fact that it was 2:40 a.m. on a Sunday morning. The officer said that he was taught in training that forty percent of all people who have a slow response at a traffic signal may be under the influence of alcohol.

Emory maintains that these factors did not provide the officer with authority for the stop because Emory had not violated any traffic laws or engaged in any kind of criminal activity. Emory asserts that each of these factors could have an innocent explanation. Delay at the light, for example, could be caused by preoccupation, and closeness to other vehicles could have been caused by the narrowness of the road. In addition, Emory contends that *State v. McAfee,* 116 Idaho 1007, 783 P.2d 874 (Ct. App.1989), supports his contention that these factors did not provide the officer with reasonable and articulable suspicion for the stop.

In *McAfee,* police officers saw a van-type vehicle at approximately 2:00 a.m., waiting at a Ketchum, Idaho, stop sign. After one or two minutes the van abruptly turned the corner, parked at an adjacent curb and the vehicle's engine and lights were turned off. After observing the van for a few minutes, the officers approached the vehicle, awakened a sleeping McAfee and ordered him to come out of the vehicle. McAfee appeared to be under the influence of alcohol and he was arrested. The officers articulated the following reasons for their actions: recent criminal activity had occurred in the area, the late hour, the erratic operating procedures, and the fact that the vehicle was well-suited for transporting burglarized property. In addition, the officers stated that they believed that the vehicle may have been experiencing mechanical problems due to the way it was being driven. However, neither officer could articulate what facts led them to believe that McAfee was having problems with the vehicle. The state argued that these factors provided the officers with authority to make an "investigative stop" of the vehicle.

Although we held in *McAfee* that the officers lacked the articulable level of suspicion necessary for a seizure of McAfee from his vehicle by the police, we did not necessarily reject any one factor which the officers had considered. We merely held that based on the totality of the circumstances a reasonable articulable suspicion was lacking. While *McAfee* is similar to the present case in some respects, we do not rely upon it greatly here. Each case must be determined on its own facts, because circumstances which may be insignificant in one setting might take on greater importance in another. We conclude, however, for reasons explained below, that the observed facts, at the time of the stop of Emory's vehicle, were insufficient to provide the officer with reasonable and articulable suspicion that Emory was driving his vehicle while under the influence of alcohol.

 We recognize that the applicable standard is one of reasonable and articulable suspicion, not probable cause. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66

**664**

L.Ed.2d 621 (1981) (footnote omitted). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *Mason v. State Department of Law Enforcement,* 103 Idaho 748, 653 P.2d 803 (Ct.App.1982). In contrast, a stop based on probable cause requires that the officer have a more particularized reason for the stop. To have probable cause for a stop, an officer must possess facts that would lead a person of ordinary prudence to entertain an honest belief that the suspect has committed a crime. *State v. Loyd,* 92 Idaho 20, 435 P.2d 797 (1967). *See, e.g., In re Griffiths,* 113 Idaho 364, 744 P.2d 92 (1987) (exceeding the speed limit and repeatedly failing to stay within one's traffic lane furnishes probable cause to stop a motor vehicle). The reasonable suspicion standard requires less than probable cause, but more than speculation or instinct on the part of an officer.

Here, the officer lacked objective facts from which to infer that Emory was engaged in criminal activity. The evidence adduced by the officer could just as easily be explained as conduct falling within the broad range of what can be described as normal driving behavior. "Of course, an officer may draw reasonable inferences from the facts in his possession, and those inferences may be informed by the officer's experience and law enforcement training." *State v. Montague,* 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988). In this case, the officer relied upon his prior training which suggested that forty percent of all people who make a delayed response to a traffic signal are driving while under the influence of alcohol. However, such inferences must still be evaluated against the backdrop of everyday driving experience. It is self-evident that motorists often pause at a stop sign or traffic light when their attention is distracted or preoccupied by outside influences. Moreover, the fact that the stop occurred in the early morning hours does not enhance the suspicious nature of the observation. Likewise, driving a vehicle within one foot of parked cars on a narrow street is equally insignificant. Emory was driving a relatively large vehicle along a narrow street marked with a centerline. Emory's vehicle was in its proper lane and was moving in a straight line down the street. No weaving or crossing of the center dividing line was observed by the officer. Such conduct can hardly be described as suspicious.

We conclude that the officer's observations regarding Emory's driving pattern failed to give rise to reasonable and articulable suspicion that Emory was driving his vehicle while under the influence of alcohol. Although it later became apparent that Emory was indeed intoxicated, the suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop. Our conclusion is based on the fact that under the "totality of the circumstances," the factors taken as a whole do not suggest that Emory was engaged in criminal activity. The test, we reiterate, is fact specific and focuses on the totality of circumstances.

The order denying the motion to suppress and the order entered upon Emory's conditional guilty plea are, therefore, reversed.

SILAK, J., and HURLBUTT, J. PRO TEM., concur.