**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40001**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Unpublished Opinion No. 558** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: July 1, 2013** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RUBEN GAYTAN aka GAYTON,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Order of the district court denying suppression motion, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Ruben Gaytan appeals his conviction for lewd conduct with a minor under the age of sixteen. He asserts that the district court erred in denying his motion to suppress evidence gained as a result of Gaytan's detention, which he contends was effectuated without suspicion of illegal activity. We affirm.

**I.**

**BACKGROUND**

Shortly after 2 a.m. on November 12, 2011, two officers were patrolling in Meridian, Idaho. As a routine part of the patrol, they passed by a park in an area that had been known for incidents of vandalism, car burglaries, and curfew violations. One of the two officers, Officer Siems, had previously come upon people having sex in a parked vehicle in that park.

On this night, Officer Siems noticed a white SUV sitting in the park as he drove past. Although he did not initially see anyone in the vehicle, when he shined his spotlight into the

1

SUV two people popped up, looking startled. According to Officer Siems, the two looked as if they had gotten caught doing something wrong. It was "a startled 'oh crud' kind of look on their faces." Officer Siems could see the male to below the shoulder and observed that he was shirtless, but all the officer could discern about the female was her face and long dark hair. Officer Siems activated his overhead emergency lights to let the startled individuals know that he was an officer of the law, and closed the fifty feet to the parked car. As the officer drove closer, the male jumped over the backseat, exposing the right side of his body, and the officer then could see that the man was completely unclothed.

Officer Siems got out of his car and knocked on the SUV's window, and he then could see that the female was also unclothed. Instead of rolling down the window, the female opened the door when the officer knocked. She was trying to cover herself and looked frightened. The officer asked how old she was, and she replied that she was fourteen. Meanwhile, the male was in the back of the SUV moving around under a blanket. He initially was unresponsive to the officer's commands. He was hostile and unwilling to cooperate, but eventually told Officer Siems that he was the girl's father and identified himself as Ruben Gaytan. The girl confirmed that Gaytan was her father.

Gaytan was subsequently charged with lewd conduct with a minor. He moved to suppress all evidence observed by the officer after the patrol car's overhead lights were activated because, Gaytan argued, he was illegally seized upon activation of the overhead lights. The State did not dispute that Gaytan was detained at that point, but argued that Officer Siems had reasonable suspicion to justify the detention. The district court assumed that a seizure had occurred as conceded, but found the officer's actions were supported by reasonable suspicion. The court therefore denied the suppression motion. Gaytan thereafter conditionally pleaded guilty, reserving the right to appeal the denial of his motion. This appeal followed.

## II.

## STANDARD OF REVIEW

Our standard of review for orders on suppression motions distinguishes Fourth Amendment questions of law from questions of fact. *State v. Cardenas*, 143 Idaho 903, 906, 155 P.3d 704, 707 (Ct. App 2006). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v.*

*Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). We accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).

## III.

## ANALYSIS

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. A seizure occurs whenever an officer, by means of physical force or show of authority, restrains the liberty of an individual. *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980); *State v. Agundis*, 127 Idaho 587, 593, 903 P.2d 752, 758 (Ct. App. 1995). For investigative stops of an individual, such a seizure is reasonable, and therefore constitutional, only if the officer reasonably suspects that the person has committed or is about to commit a crime. *United States v. Hensley*, 469 U.S. 221, 227-29 (1985).

Reasonable suspicion requires more than mere speculation or intuition. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Emory*, 119 Idaho 661, 664, 809 P.2d 533, 525 (1991). It is based on articulable facts giving a "particularized and objective basis" to suspect wrongdoing. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Emory*, 119 Idaho at 664, 809 P.2d at 525. Reasonable suspicion is determined by considering the totality of the circumstances at the time of the stop. *Cortez*, 449 U.S. at 418; *State v. Haworth*, 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984). It is based on "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *State v. Kessler*, 151 Idaho 653, 655, 262 P.3d 682, 684 (Ct. App. 2011). This determination includes not only the facts as known at the time, but also all reasonable inferences from those facts. *Terry*, 392 U.S. at 21. Whether an inference is reasonable is not based solely on a lay person's prospective; rather, it is viewed in light of an officer's experience and training. *Cortez*, 449 U.S. at 417; *Emory*, 119 Idaho at 664, 809 P.2d at 525. The standard remains an objective one, however, so that an individual officer's subjective thought process is not used to determine whether an inference is reasonable. *Deen v. State*, 131 Idaho 435, 436, 958 P.2d 592, 593 (1998).

Although it is essential for the court to consider both the quantity and quality of the information known to the officer, *Alabama v. White*, 496 U.S. 325, 330 (1990); *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003), a court should not consider only those

facts that it deems "suspicious," *United States v. Sokolow*, 490 U.S. 1, 10 (1989), nor eliminate those that have possible noncriminal explanations, because "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* Thus, although "each of the series of acts was perhaps innocent in itself . . . taken together, they [may] warrant[] further investigation"; *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (internal quotation marks omitted), so the mere "existence of alternative innocent explanations does not necessarily negate reasonable suspicion." *State v. Danney*, 153 Idaho 405, 411, 283 P.3d 722, 728 (2012).

For purposes of this appeal we assume, as the district court did, that Gaytan was seized when the patrol car's overhead lights were activated. We also conclude, as did the district court, that the officer's actions were justified by a reasonable suspicion that illegal activity was occurring. Before activating his overhead lights, Officer Siems had seen a partially unclothed man and a female companion in the backseat of a vehicle located in a place of public access at about 2 a.m. When the officer shined his light in their direction, the pair started up with concern on their faces, and the man appeared to be unclothed above the waist. Given the late hour, the level of undress on a chilly winter night, and the couple's apparent alarm at being observed, an officer could reasonably suspect that illegal sexual activity was afoot. While each fact may individually be susceptible to an innocent explanation, taken together the facts supported the officer's reasonable suspicion.

Gaytan argues that Officer Siems lacked the requisite suspicion of any particular violation. He asserts that the officer lacked evidence of certain elements of any specific criminal act: i.e., there was no evidence that the participants' genitals were exposed as required for violation of the indecent exposure statute, I.C. § 18-4116; that the two people were unmarried as is necessary for violation of the fornication statute, I.C. § 18-6603; that their ages were such that statutory rape or lewd conduct could be occurring, I.C. §§ 18-6101(1), 18-1508; or that either individual was a juvenile participating in a curfew violation, I.C. § 20-549. This argument is without merit because reasonable suspicion for an investigatory stop does not require that the officer know every detail of what is occurring. If the officer knew that all the elements of a criminal act were present, the intervention would not be an investigatory one; the officer would have probable cause for an arrest or an arrest warrant.

4

The purpose of an investigatory stop is to allow the officer to ascertain whether a crime has occurred or will be occurring. Such an investigation is intended to either confirm or dispel the officer's reasonable suspicion about the suspected criminal activity. To require evidence of each element of a given crime would run counter to the totality of the circumstances test described by the Supreme Court in *Cortez*, 449 U.S. at 418. That evidence of each element of a crime is not required was made plain in *Terry*, the seminal case in which the United States Supreme Court held that investigative stops may be based upon reasonable suspicion. There, the suspicious conduct that was held to justify an investigatory detention involved two men who, one at a time, walked past some stores, paused to look in a particular store window, and then turned around, pausing once more at the same store window before rejoining his companion and conferring briefly. This conduct was repeated numerous times, and then they engaged in a brief conversation with a third man who briefly joined them. Thereafter, the two men resumed their pacing and window-peering several more times before they walked away in the same direction that the third man had taken. *Terry*, 392 U.S. at 6. On those facts, it does not appear that the officer had observed evidence of the elements of any crime, but the United States Supreme Court held that he reasonably suspected that criminal activity was afoot, possibly the planning of a theft from the store. *Id.* at 22-23.

Considering the totality to the circumstances at the time, the officer here had reasonable suspicion that Gaytan was engaged in criminal activity, which justified the detention of Gaytan for the purpose of confirming or dispelling these suspicions. The district court's order denying Gaytan's suppression motion is therefore affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**