IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42729

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, June 2015 Term |
| | ) | |
| Plaintiff-Respondent, | ) | 2015 Opinion No. 107 |
| | ) | |
| v. | ) | Filed: November 23, 2015 |
| | ) | |
| NATHAN DAVID NEAL, | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| Defendant-Appellant. | ) | SUBSTITUTE OPINION: |
| | ) | THE COURT'S PREVIOUS |
| | ) | OPINION ISSUED |
| | | NOVEMBER 4, 2015 IS |
| | | HEREBY WITHDRAWN |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, Senior District Judge, Hon. Kevin Swain, Magistrate Judge.

District court decision reversing magistrate on motion to suppress, reversed and remanded.

Tri-City Legal, Boise, for appellant. Eric J. Scott argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Lori A. Fleming, Deputy Attorney General argued.

---

BURDICK, Justice

This case is before the Court on a petition for review. The magistrate granted Neal's motion to suppress; on appeal the district court reversed, and the Court of Appeals affirmed. We reverse the district court.

## BACKGROUND

Shortly before midnight on November 14, 2012, Boise Police Officer Ryan Thueson began following Nathan David Neal in a patrol car. Thueson observed Neal drive his pickup onto, but not across, the line at the edge of the roadway (the "fog line") near the intersection of State Street and Ellen's Ferry Drive. Thueson continued to follow Neal until, about one mile further west, near the State Street intersection with Gary Lane, he saw Neal again drive onto, but not across, the line at the edge of the roadway. According to Officer Thueson's original report, at

1

the time he observed Neal drive onto the fog line twice. Thueson learned later that there is no fog line near Gary Lane and the line actually marks a bicycle lane. Thueson stopped Neal after he turned right onto Gary Lane. This traffic stop led to Neal's arrest for driving under the influence of alcohol. He was not ticketed for any traffic violations.

Neal filed a motion to suppress, claiming the officer lacked reasonable articulable suspicion of criminal activity to justify a traffic stop. The State argued the officer observed both a misdemeanor (Boise City Code section 10-10-17, which prohibits driving upon a bicycle lane) and an infraction (Idaho Code section 49-637, which requires drivers to maintain a single lane of travel), and that these observations justified the stop. The State also argued that observing these two instances of driving onto the line on the right, close to midnight, gave the officer reasonable suspicion that the driver was intoxicated, which also justified the stop. Thueson observed no other traffic infractions, testifying that Neal's driving was otherwise "completely appropriate," and that the only thing that caused him to stop the vehicle was the two instances of Neal's driving onto the line to his right.

After a hearing and reviewing briefs, the magistrate granted Neal's motion to suppress. The magistrate held there was no traffic violation justifying the stop because Neal did not cross the line and enter another lane. The magistrate also held that driving onto an alleged fog line two times did not create a driving pattern outside the broad range of normal driving behavior, so the officer did not have reasonable suspicion of DUI. Finally, the magistrate found there was no evidence the officer's observations occurred in Boise, so there was no violation of Boise City Code.

The State appealed, and the district court reversed. The district court held that "[a] vehicle has not maintained its lane and is not in its lane, if it is on the lane markings." Thus the district court found that the fog line is not part of the lane of travel. The district court also held that Neal had violated the Boise City ordinance prohibiting entry into a bicycle lane. Although the magistrate had found there was no evidence the incidents occurred in Boise, the district court found the conduct did occur in Boise. The district court held that by driving onto the bicycle lane marker, Neal violated a Boise City ordinance prohibiting driving in a bicycle lane. Thus, the district court found that the bicycle lane marker is part of the bicycle lane. The district court ultimately concluded that the officer had reasonable suspicion that both "the statute and ordinance were violated by Mr. Neal's driving upon the fog line and upon the bike lane marker."

2

The district court agreed with the magistrate that Neal's driving pattern was not sufficiently outside the normal range of driving behavior to constitute reasonable suspicion that he was driving while intoxicated, concluding that the suspected traffic violations justified the stop. The district court reversed the magistrate's decision granting Neal's motion to suppress.

Neal appealed, and the Court of Appeals affirmed, ruling that driving on, but not across, an alleged fog line on the roadway violates the state statute requirement that a vehicle remain within its lane. This Court granted Neal's petition for review.

**STANDARD OF REVIEW**

When a case comes before this Court on a petition for review following a Court of Appeals opinion, this Court, though giving serious consideration to the reasoning of the Court of Appeals, directly reviews the lower court's decision. *State v. Herren*, 157 Idaho 722, 724, 339 P.3d 1126, 1129 (2014). "This Court does not review the decision of the magistrate court." *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013). "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)). We review the trial court's record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id*. "The interpretation of a statute is a question of law over which this Court exercises free review." *Herren*, 157 Idaho at 724, 339 P.3d at 1129.

**DISCUSSION**

The issue on this appeal is whether the district court erred in concluding that Officer Thueson had reasonable articulable suspicion for the traffic stop. In the trial court, Neal moved to exclude all evidence gathered following the stop on the theory that the officer had no justification for stopping him and thus violated his Fourth Amendment rights. The magistrate granted the motion, and the district court reversed. Therefore the only issue before the Court is whether the officer had reasonable suspicion of criminal activity at the time of the stop.

"Traffic stops constitute seizures under the Fourth Amendment." *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Nevertheless, "[l]imited investigatory detentions are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime." *State v. Morgan*, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). Thus there are two possible

justifications for a traffic stop—the officer has reasonable suspicion that a driver has committed an offense, such as a traffic offense, or the officer has reasonable suspicion of other criminal activity, such as driving under the influence. In this case, the State offered three justifications for the officer's stop: (1) the officer had reasonable suspicion that Neal committed the offense of violating Idaho Code section 49-637 by driving onto the fog line; (2) the officer had reasonable suspicion that he committed the offense of driving in violation of Boise City Code section 10-10-17 by driving onto a bicycle marker line; and (3) the officer had reasonable suspicion Neal was driving under the influence because of his "driving pattern."

As to the violation of a Boise city ordinance, the magistrate found "there was no evidence this occurred in Boise." An appellate court must defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Tucker*, 132 Idaho 841, 842, 979 P.2d 1199, 1200 (1999). If the findings of fact are based on substantial and competent evidence, the appellate court may not disturb those findings. *State v. Ray*, 153 Idaho 564, 567, 286 P.3d 1114, 1117 (2012). The district court nevertheless found the conduct had occurred in Boise and considered the bicycle lane violation in analyzing the validity of the stop. The district court was an appellate court and thus could not substitute its own findings of fact for the magistrate's findings. The magistrate's finding that the state had not proved the incident occurred in Boise was supported by substantial and competent evidence. Therefore, we will not consider the Boise City code violation as justification for the stop.

The only arguments relevant to whether the stop was justified are those reflecting the facts known to the officer at the time he stopped Neal. "The test for reasonable suspicion is based on the totality of the circumstances known to the officer at or before the time of the stop." *Morgan*, 154 Idaho at 112, 294 P.3d at 1124. "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). "The suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop." *State v. Emory*, 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App. 1991).

**A.**     **Whether the stop was justified by reasonable suspicion of driving while intoxicated.**

The State argues that because Officer Thueson, near midnight, observed Neal twice drive onto the line marking the right side of his lane of travel, he could reasonably suspect Neal was

4

driving under the influence (DUI). Both the magistrate and the district court found that driving onto but not across the line twice in one mile was not sufficient to provide reasonable suspicion that Neal was driving while intoxicated. While a driving pattern may give rise to reasonable suspicion of intoxication, the test is whether the driving pattern falls outside "the broad range of what can be described as normal driving behavior." *Emory*, 119 Idaho at 664, 809 P.2d at 525 ("An officer may draw reasonable inferences from the facts in his possession . . . . However, such inferences must still be evaluated against the backdrop of everyday driving experience.").

We agree with the trial court and the district court. Without more, the two instances of moving onto the fog line are not sufficient to arouse reasonable suspicion of DUI under Idaho precedent. *See id.* ("[T]he fact that the stop occurred in the early morning hours does not enhance the suspicious nature of the observation. . . . Emory's vehicle was in its proper lane and was moving in a straight line down the street. No weaving or crossing of the center dividing line was observed by the officer. Such conduct can hardly be described as suspicious."); *State v. Flowers*, 131 Idaho 205, 209, 953 P.2d 645, 649 (Ct. App. 1998) (upholding the magistrate court's conclusion that "While any one of the factors identified . . . may not have given rise to a reasonable suspicion standard, all of them taken together do so. The Defendant's slow speed, hugging of the fog line, weaving in his lane of travel, crossing the fog line to the width of a tire, and then moving left to touch the center line one or two times, all within a mile or two, give rise to reasonable suspicion.").

The mere touching of lines on roadways does not constitute reasonable suspicion of DUI in other jurisdictions either. *See United States v. Colin*, 314 F.3d 439, 446 (9th Cir. 2002) (car's touching the right fog line and the center yellow line each for ten seconds after legitimate lane changes did not give officer reasonable suspicion of driving under the influence); *United States v. Freeman*, 209 F.3d 464, 466–67 (6th Cir. 2000) (a motor home's brief entry into the emergency lane does not constitute probable cause that the driver was intoxicated); *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993), *overruled on other grounds by United States v. Botero-Ospina*, 71 F.3d 783, 786–87 (10th Cir. 1995) ("[I]f failure to follow a perfect vector down the highway or keeping one's eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy."); *United States v. Wendfeldt*, No. 3:11-CR-00094-LRH, 2014 WL 5822804, at *3 (D. Nev. Nov. 7, 2014) ("Although Wendfeldt's right tires touched the fog line

5

several times, he was not speeding or driving erratically in any way, and his driving posed no danger to any other motorists."); *United States v. Ochoa*, 4 F. Supp. 2d 1007, 1012 (D. Kan. 1998) (single drift onto the shoulder did not justify stopping defendant); *State v. Tague*, 676 N.W.2d 197, 205–06 (Iowa 2004) (single incident of crossing left edge line for a brief moment did not meet reasonableness test under the state constitution); *State v. Binette*, 33 S.W.3d 215, 219–20 (Tenn. 2000) (occasional drifting from the center of the lane did not amount to reasonable suspicion). Two instances of driving onto the fog line do not create a driving pattern that justifies an investigatory stop of the vehicle for suspicion of DUI.

**B**.     **Whether the stop was justified by reasonable suspicion of a violation of Idaho Code section 49-637.**

The State argues that the fog lines are not part of the lane of travel and that to drive upon them is to exit the lane of travel. Statutory analysis "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). "This Court interprets statutes according to their plain, express meaning and resorts to judicial construction only if the statute is ambiguous, incomplete, absurd, or arguably in conflict with other laws." *Arambarri v. Armstrong*, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012). "Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to construe the language." *Friends of Farm to Mkt. v. Valley Cnty.*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002). "An unambiguous statute would have only one reasonable interpretation. An alternative interpretation that is unreasonable would not make it ambiguous." *Verska*, 151 Idaho at 896, 265 P.3d at 509. The statute at issue here, "Driving on highways laned for traffic," provides as follows:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
>
> 1. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

Idaho Code § 49-637.

Title 49 of the Idaho Code defines the terms used in the statutes within that title. None of the terms defined by statute or areas excluded by statute refers to lane markers. "Highway"

6

means "the entire width between the boundary lines of every way . . . with jurisdiction extending to the adjacent property line, including sidewalks, shoulders, berms and rights-of-way not intended for motorized traffic." I.C. § 49-109(5). ("Highway" is synonymous with "street." *Id.*) "Roadway" means "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of sidewalks, shoulders, berms and rights-of-way." I.C. § 49-119(19). A "sidewalk" is "that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for use by pedestrians." I.C. § 49-120(12). Thus the edge of the roadway is the curb or sidewalk. Idaho Code does not define "shoulder." However, Webster's defines "shoulder" as "the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency."[1] *Shoulder*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). "Lane of travel" or "traffic lane" means "that portion of the roadway for movement of a single line of vehicles." I.C. § 49-121(4). Therefore, the statute does not provide any definitions that clarify what is meant by "within a single lane," or, more to the point, "as nearly as practicable entirely within a single lane." Because we are unable to discern on the face of the statute the meaning of this phrase, we find that it is reasonably susceptible of more than one meaning and therefore is ambiguous.

"In construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions." *In re Estate of Wiggins*, 155 Idaho 116, 119, 306 P.3d 201, 204 (2013) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). "Statutes must also be construed as a whole without separating one provision from another." *Izaguirre v. R & L Carriers Shared Servs., LLC*, 155 Idaho 229, 234, 308 P.3d 929, 934 (2013). "Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent." *Lockhart v. Dep't of Fish and Game*, 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992). "Statutes and ordinances should be construed so that effect is given to their provisions, and no part is rendered superfluous or insignificant." *Friends of Farm*, 137 Idaho at 197, 46 P.3d at 14.

---

[1] Title 40 of the Idaho Code, "Highways and Bridges," defines the term "main traveled way" as "the portion of a roadway for the movement of vehicles, exclusive of shoulders." I.C. § 40-114(1). This definition is essentially the inverse of the Webster's definition of "shoulder," lending support for the appropriateness of using the Webster's definition of "shoulder" in the absence of a statutory definition.

[C]ourts should presume that a statute was not enacted to work a hardship or to effect an oppressive result. Constructions that would render the statute productive of unnecessarily harsh consequences are to be avoided. Accordingly, any ambiguity in a statute should be resolved in favor of a reasonable operation of the law.

*Lawless v. Davis*, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977).

The Idaho statute at issue is in the center of a series of statutes dealing with managing traffic safety vis-a-vis other vehicles. Idaho Code sections 49-630 through 49-644 all address topics having to do with sharing the road with other drivers—for example, which side to drive on and applicable exceptions (I.C. §§ 49-630, 635, 636); rules for passing other vehicles (I.C. §§ 49-631–634); rights of way associated with turning (I.C. §§ 49-639–644); and prohibitions on following too closely (I.C. § 49-638). The fact that this portion of Idaho's motor vehicle code contains all the rules relating to rights of way and safety management regarding other vehicles supports the construction that section 49-637(1) regulates the interaction of traffic between lanes, not a driver's interaction with the sidewalk, curb, or shoulder.

Idaho Code section 49-630(1) requires that drivers drive on the right half of the roadway. *State v. Slater*, 136 Idaho 293, 298, 32 P.3d 685, 690 (Ct. App. 2001). Put another way, section 49-630(1) does not prohibit driving anywhere on the right half of the roadway except sidewalks, shoulders, berms, and rights-of-way. There is no mention of the edge, the edge line, the fog line, or any other kind of marker. Construing this section together with 49-637(1), so that they are not in conflict, leads to the conclusion that section 49-637(1) does not prohibit driving on an edge line in the roadway. There was no allegation here that Neal was driving on the shoulder; therefore, he was still in the roadway.

In fact, the edge line may or may not even be present on the roadway; its purpose is not to create a lane boundary but to inform the driver of the road's edge so that under certain conditions the driver can safely maintain his or her position on the roadway.[2] Because the edge lines are not always present, if they are not part of the lane, then the usable portion of the lane would actually be widening or narrowing depending on whether there is a line present. Where the lines are absent, the edge of the road is considered the curb, and it is an unreasonable interpretation to

---

[2] "Edge line markings have *unique* value as visual references to guide road users during adverse weather and visibility conditions. . . . Wide solid edge line markings may be used for greater emphasis. . . . Edge line markings may be excluded, based on engineering judgment, for reasons such as if the traveled way edges are delineated by curbs, parking, or other markings." Manual on Uniform Traffic Control Devices, 371, § 3B.06, 07, U.S. Dept. of Transportation (2009, Rev. 2012).

conclude that where there is a stripe near the edge, the inside of the stripe marks the limits of where a driver's tires can go, but where it is absent, the curb—which would be located at the outer edge of the painted line—marks those limits.

Further, the motor vehicle code in general often encourages or requires drivers to move to the right. Therefore, driving onto the right edge marker would not seem to be a safety concern. For instance, when driving at less than normal speed of traffic, one must drive "as close as practicable to the right-hand curb or edge of the highway. . . ." I.C. § 49-630(2). When turning, "[b]oth the approach for a right turn and the right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." I.C. § 49-644(1). A driver must immediately drive "as close as possible to the nearest edge or curb of the highway" upon the approach of police vehicles using audible or visible signals. I.C. § 49-625. Movement toward the right edge of the highway, roadway, or main traveled way is not prohibited in the motor vehicle code except where the driver must yield to someone else who has the right of way.

This comports with the overall purpose of the motor vehicle code, which "was designed to protect motorists and other persons using Idaho's roads from a particular harm caused by persons operating motor vehicles thereon." *Ahles v. Tabor*, 136 Idaho 393, 396, 34 P.3d 1076, 1079 (2001), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). Thus there does not appear to be any support for interpreting "as nearly as practicable within a single lane" to exclude the edge of the roadway; in fact where the edge of the roadway is mentioned in the code, its use is encouraged.

It is not a reasonable interpretation of the statute to conclude that the legislature intended to prohibit drivers from merely touching the line painted at the edge of the roadway. First, the plain meaning of "whenever any highway has been divided into two (2) or more clearly marked lanes" is that the statute only applies to highways with at least two lanes of travel and excludes one-lane roads. Yet one-lane roads also have edges and may be marked with fog lines. It is not a reasonable interpretation to conclude that the legislature would prohibit movement upon the fog line only on multiple-lane roads. If the legislature intended to prohibit driving on top of the fog line, then the statute would also apply to one-lane roads.

Second, if the fog line is not part of the lane of travel, then it must be part of whatever lies just beyond the roadway: the shoulder, the curb, or the sidewalk. Yet the relevant statutory definitions do not support this result. Nothing in the definitions of "highway," "roadway," "lane

9

of travel," or "sidewalk" supports the State's position that the inside-edge of the painted fog line marks the outside boundary of the lane of travel. None of the terminology in the statute or the definitions of terms suggests that the legislature intended to carve out a "no-man's land" at the edge of the roadway upon which no vehicle can drive. Rather, if an area is not the shoulder or the sidewalk or the curb, it is, according to statutory definition, the roadway. Fog lines are not painted on the sidewalks, curbs, shoulders, or beyond the roadway's edge; they are painted onto the roadway itself.

Further, the cases that have found a lane breach constituted a violation of identically worded statutes generally involve a driver's breaching of the line separating lanes of traffic and involve crossing, not merely driving onto, the lines. Very few cases have found that merely touching the fog, or edge, line violates the statute; generally, there must be more. *See, e.g.*, *United States v. Alvarado*, 430 F.3d 1305 (10th Cir. 2005) (crossing the fog line and driving onto the shoulder); *United States v. Williams*, 945 F. Supp. 2d 665, 672 (E.D. Va. 2013) (repeated touching and weaving within lane); *People v. Geier*, 944 N.E.2d 793, 799 (Ill. App. Ct. 2011) (all four of vehicle's wheels crossed the fog line and driver crossed center line once). *But see State v. McBroom*, 39 P.3d 226, 229 (Or. Ct. App. 2002) (driving with tires on the center lane marker for 300 feet violated the statute).

"Constructions that would render a statute productive of unnecessarily harsh consequences are to be avoided and any ambiguity in a statute should be resolved in favor of a reasonable operation of the law." *Higginson v. Westergard*, 100 Idaho 687, 691, 604 P.2d 51, 55 (1979). We find that it would be an unnecessarily harsh interpretation of the statute to conclude that a driver can be pulled over, cited, and possibly then subject to intrusive searches, for merely touching the line at the edge of the roadway. Further, when statutory language is ambiguous, we examine the proffered interpretations and consider the "context in which the language is used, the evils to be remedied and the objects in view." *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). The evil to be remedied in this statute is to prevent dangerous, unsafe movement out of a lane of traffic and into another lane of traffic.

We hold that driving onto but not across the line marking the right edge of the road does not violate Idaho Code section 49-637 and therefore the officer's stop of Neal was not justified.

CONCLUSION

We reverse the decision of the district court reversing the magistrate's granting of Neal's motion to suppress. We remand to the trial court.

Chief Justice J. JONES and KIDWELL, J., Pro tem, **CONCUR.**

HORTON, J., concurring in part and dissenting in part.

I join in Section A of the Court's opinion. No reasonable person could entertain a reasonable suspicion that a motorist was driving under the influence based upon observing a car's right hand tires touch the line marking the right side of a lane two times when there was a separation of approximately one mile between occurrences. However, I respectfully dissent from Section B of the Court's opinion and from the conclusion that the decision of the district court should be reversed. For the following reasons, I would affirm.

Idaho Code section 49-637 provides, in pertinent part, as follows:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:

> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

I agree with the majority's analysis of Idaho Code Section 49-637(1) in one respect; the plain language of the statute does not express clear legislative intent regarding the legal effect of driving on a fog line or other line demarcating a lane of travel. This is because the statute does not address fog lines or roadway markings of any kind. In my view, the appropriate inquiry is framed by the statute imposing a duty on motorists to drive their vehicles "as nearly as practicable entirely within a single lane." Thus, the real question is: "What does it mean to drive 'within a single lane?' " The answer to this question lies in the meaning of the longitudinal line markings found on Idaho's roadways.

This Court has stated that "[t]raffic rules and regulations, signs, signals and markings, lawfully adopted and placed by administrative authority, and which are not merely arbitrary or capricious, have the force and effect of law, and motorists are charged with knowledge of the significance thereof." *Howard v. Missman*, 81 Idaho 82, 88, 337 P.2d 592, 595 (1959). This statement leads me to consider the exercise of administrative authority reflected by the lines on the roads.

11

The legislature has charged the Idaho Transportation Board with the obligation to "adopt a manual and specifications for a uniform system of traffic-control devices" that "shall correlate with and, so far as possible, conform to the system set forth in the most recent edition of the manual on uniform traffic-control devices for streets and highways and other standards issued or endorsed by the federal highway administrator." I.C. § 49-201(3). In response, by way of IDAPA 39.03.41.004, the Board has adopted the 2009 edition of the "Manual on Uniform Traffic Control Devices for Streets and Highways" (MUTCD), published by the Federal Highway Administration of the U.S. Department of Transportation.

MUTCD tells us what kinds of line markings[3] are to be found on roads. For two-way roadways, center line pavement markings are yellow. MUTCD § 3B.01.01. White "lane line pavement markings delineat[e] the separation of traffic lanes that have the same direction of travel." MUTCD § 3B.04.01. MUTCD § 3B.06 addresses the standards for "edge line pavement markings." Such markings "delineate the right or left edges of a roadway." MUTCD § 3B.06.01. Left hand edges of roadways may be delineated by a solid yellow line, MUTCD § 3B.06.03, and, of particular significance to this litigation, "[i]f used, right edge line pavement markings shall consist of a normal solid white line to delineate the right-hand edge of the roadway." MUTCD § 3B.06.04.

Idaho Code section 49-119(19) defines "roadway" as "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of sidewalks, shoulders, berms and rights-of-way." Because a traffic lane is "that portion of the roadway for movement of a single line of vehicles," I.C. § 49-121(4), and the right edge line pavement marking serves "to delineate the right-hand edge of the roadway," MUTCD § 3B.06.04, the right edge line pavement marking (the fog line or bicycle lane designator) delineates the right side of the traffic lane.

The question then is whether the right edge line pavement marking is "within" or "without" the traffic lane, or to analogize to sports, whether the edge line is "in bounds" (e.g. tennis) or "out of bounds" (e.g. football). There are two premises underlying my conclusion that the edge line is "out of bounds" or "without" the lane of travel.

The first premise is that lanes of travel are distinct from one another and do not overlap. This is because safety issues arise when two or more vehicles attempt to occupy the same place

---

[3] "Lines," for purposes of pavement markings, are not continuous. Rather, "lines" may be "solid," "broken," or "dotted." MUTCD § 3A.06.01,02.

at the same time on a roadway, whether travelling in the same or opposite directions. For that reason, multiple-lane roadways are designed to separate "lanes of travel" in order to allow different lines of vehicles to operate in parallel on the roadway.

The second premise is that lane markings found at the far right side of the roadway do not have special or unique qualities distinguishing them from any other lane marking. Stated differently, in my view, lane markings—whether on the right or left, broken, dotted or solid, white or yellow—hold equal significance when defining the boundaries of a lane of travel. Certainly, there is nothing to be found in the Idaho Code or MUTCD that suggests that the lines on the far right side of the roadway have lesser significance than the other lines defining lanes of travel.

Based upon these two premises, I conclude that roadway markings demarcating a lane of travel represent the boundaries of the lanes but are not within the lane itself. A contrary conclusion, i.e., that lane markings are within the lane, leads to absurd consequences. If roadway lane markings—whether white or yellow, solid or dashed—used to "delineat[e] the separation of traffic lanes" were deemed to be "within" the lane, then those lane markings would be "within" two lanes at once. As the lines of vehicles in adjacent lanes cannot simultaneously occupy the space above the line separating those lanes, I believe that lanes of travel fall between, not on, the lines defining their bounds. For these reasons, I believe that Officer Thueson had reasonable, articulable suspicion to believe that he observed a violation of Idaho Code section 49-637 on each occasion when he saw Neal's tires on the line marking the boundary of the right hand lane of travel because Neal's vehicle was no longer "within" its lane of travel. For this reason, I would affirm the decision of the district court.

Having explained the reasons for my conclusion, I think it is appropriate to consider some of the arguments advanced by the majority to support its conclusion that the right edge line pavement markings are within a traffic lane.

I start first where the majority ends. This is because this is the point where the legal arguments have ended and the real reason for the majority's conclusion is to be found. The majority concludes: "We find that it would be an unnecessarily harsh interpretation of the statute to conclude that a driver can be pulled over, cited, and possibly then subject to intrusive searches, for merely touching the line at the edge of the roadway." The majority's view of a "harsh interpretation of the statute" appears to be nothing more than the majority's distaste for

13

the result of this particular stop. I acknowledge that my view of Idaho Code section 49-637 would permit an officer to "pull over" and "cite" a motorist for a violation of the statute. However, try as I might, I cannot fathom how a motorist might lawfully be "subject to intrusive searches," whether of the person or the automobile, "for merely touching the line at the edge of the roadway."

I differ from the majority in that I believe that the results of Neal's detention have no legal significance when deciding whether that detention was lawful. The majority's conclusion reflects its dissatisfaction with the outcome of the detention, [4] rather than appropriately focusing on the threshold question of the legality of that detention. As I believe that the majority's eagerness to reach the desired result is reflected in arguments advanced in support of its conclusion, I turn my attention to those arguments.

After concluding that Idaho Code section 49-637 is ambiguous, the majority first considers the statute's location in Title 47. It is true that Idaho Code section 49-637 is found smack dab in the middle of Idaho Code sections 49-630 through 49-644. The majority views these statutes as "all the rules relating to rights of way and safety management regarding other vehicles…." This statement is far too broad. Although these provisions primarily relate to the interaction of vehicles upon this State's highways, they also serve other safety functions. *See e.g.* I.C. § 49-643(1) ("The driver of a vehicle shall yield the right-of-way to any vehicle *or pedestrian* actually engaged in work upon a highway…."

My quarrel with the majority's reasoning is this: by artificially restricting its consideration of Title 47 to these fifteen statutes in order to bolster its conclusion, the majority ignores the fact that there are fifty-seven statutes in Chapter 6, of Title 49, entitled "Rules of the Road." The majority further ignores the fact that the "Rules of the Road" advance safety concerns apart from those relating to the interaction of vehicles on the roadways of this State. *See* I.C. § 49-603 ("No person shall start movement of a vehicle … unless movement can be made with reasonable safety."); I.C. § 49-604(1) ("The driver of a vehicle shall not back the vehicle unless that movement can be made with safety *and* without interfering with other

---

[4] For what it's worth, I don't much like the result of upholding the stop. Doing so appears to affirmatively sanction a stop that borders on pretext. The time that this stop took place strongly suggests that the officer was motivated by something quite different than a desire to enforce Idaho Code section 49-637. However, the determination whether the detention was justified does not turn on the officer's subjective motivation. Rather, it is an objective inquiry. *State v. Schwarz*, 133 Idaho 463, 467–68, 988 P.2d 689, 693–94 (1999).

traffic."); I.C. § 49-605 ("No person shall drive any vehicle upon a sidewalk or sidewalk area…"); I.C. § 49-608 ("No person shall occupy a manufactured home or commercial coach while it is being moved upon a highway."); I.C. § 49-612 (prohibiting operation of a vehicle when driver's view obstructed and interfering with driver's control of vehicle); I.C. § 49-613(1) (prohibiting placing foreign objects on roadway "likely to injure any person, animal or vehicle"); I.C. § 49-614 (prohibiting drivers from obstructing passage of other vehicles, pedestrians or railroad trains at intersections, crosswalks, and railroad crossings); I.C. § 49-615 (drivers required to exercise due care to avoid striking pedestrians, bicyclists, and children); I.C. § 49-616 (prohibiting driving in an area "within a highway for the exclusive use of pedestrians"); I.C. § 49-627 (prohibiting driving over fire hoses); I.C. §§ 49-648 to 650 (relating to railroad crossings); I.C. § 49-651 (requiring driver emerging from an alley, building, private road or driveway to stop prior to entering a sidewalk); I.C. § 49-654(1) (requiring drivers to proceed at "a safe and appropriate speed" "when special hazards exist with respect to pedestrians"); I.C. § 49-658 (prohibiting speeding in a school zone); I.C. § 49-666 (requiring those under 18 to wear helmets when riding motorcycles and ATVs); I.C. § 49-672 (requiring child safety seats); I.C. § 49-673 (requiring use of seatbelts).

There is simply no basis for the majority's conclusion that the rules of the road are solely intended to promote the safe interaction of vehicles on the roadways.

The majority's next line of analysis is based upon Idaho Code section 49-630(1). I frankly don't understand the significance that the majority places on this statute's silence as to boundary markings. The statute does not speak to lanes; instead, it requires vehicles to "be driven upon the right half of the roadway." Although the statute certainly distinguishes the rules of the road in Idaho from those in the United Kingdom and its former possessions, it provides absolutely no guidance as to the meaning of the word "lane" in Idaho Code section 49-637 or the significance of the right edge line pavement marking.

The majority's next argument is unique, in that it relies upon a definition of "unique" for its conclusion that the purpose of a right edge line pavement marking "is not to create a lane boundary but to inform the driver of the road's edge so that under certain conditions the driver can safely maintain his or her position on the roadway." The majority's argument is grounded in a statement found in MUTCD that "[e]dge line markings have unique value as visual references to guide road users during adverse weather and visibility conditions." Emphasizing the word

15

"unique," the majority then defines "unique" as "meaning their one and only value." There are two substantive difficulties with this analysis.

First, although the quoted language is cited as MUTCD § 3B.06, the majority fails to note that the quoted language is located under the caption "Support." This is noteworthy because such statements are for informational purposes and do not have legal significance. Indeed, MUTCD cautions that such statements do "not convey any degree of mandate, recommendation, authorization, prohibition, or enforceable condition." MUTCD § 1A.13.01.D. Significantly, the provisions of MUTCD that I cited earlier when explaining my reasons for reaching the opposite conclusion are found under the caption "Standard," which signifies "a statement of required, mandatory, or specifically prohibitive practice regarding a traffic control device." MUTCD § 1A.13.01.A.

The next difficulty is the definition of "unique" employed by the majority. Not surprisingly, there is no citation for the definition that is provided. Significantly, the word has secondary meanings beyond "one and only," including "having no like or equal; unparalleled" and "highly unusual, extraordinary, rare, etc.: a common usage still objected to by some." Webster's New World Dictionary 1552 (2d College ed.1976). Given that the governing standard provides that "right edge line pavement markings shall consist of a normal solid white line to delineate the right-hand edge of the roadway," MUTCD § 3B.06.04, the informational supporting statement appears to be the unremarkable observation that such markings are particularly helpful to motorists in foul weather. Not coincidentally, the supporting statement is consistent with "fog line" being favored in the vernacular over "right edge line pavement marking."

> The majority also advances the following analysis:
> [O]ne-lane roads also have edges and may be marked with fog lines. It is not a reasonable interpretation to conclude that the legislature would prohibit movement upon the fog line only on multiple-lane roads. If the legislature intended to prohibit driving on top of the fog line, then the statute would also apply to one-lane roads.

I disagree with the majority's suggestion that there is no rational basis for treating single lane roads differently than multiple-lane roads. A multiple-lane road is designed to permit lines of vehicles[5] to travel parallel to one another, whether abreast or in opposite directions, presumably

---

[5] Idaho Code section 49-121(4) defines "Traffic lane" or "lane of travel" as "that portion of the roadway for movement of a single line of vehicles."

16

in order to accommodate substantially greater vehicular traffic than would be found on a single lane roadway. I believe that the legislative interest in requiring motorists to drive in a predictable and orderly fashion upon multiple-lane roadways is evident and rational.

As I am unable to find merit in the justifications advanced by the majority for the conclusion they reach, I respectfully dissent.

Justice EISMANN, concurs.