**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41933**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2015 Opinion No. 9** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 18, 2015** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RICHARD GLENN MORRIS,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Melissa Moody, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Ellsworth, Kallas & DeFranco PLLC; John C. DeFranco, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Richard Glenn Morris appeals from his judgment of conviction after a jury found him guilty of possession of marijuana. On appeal, Morris raises two issues concerning the denial of his motion to suppress. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

A patrol officer with the Boise Police Department was on duty one night in 2012 and was driving on a residential street a few car lengths behind a vehicle driven by Morris. At some point, Morris' vehicle was in a lane with a yellow line on the left and a solid white line on the right; abutting the lane on the right was either a street parking area or bicycle lane. The patrol officer observed the passenger-side tires on Morris' vehicle move right and completely cross over the solid white line for two or three seconds, such that the left edges of the tires were about three to six inches from the right edge of the solid white line. At the time the vehicle's tires

1

crossed the line, neither the officer nor Morris perceived a circumstance that would have required the vehicle to cross the line. The patrol officer followed Morris, looking for additional traffic violations, but he found none and eventually pulled Morris over. As the patrol officer approached the vehicle, he smelled the odor of marijuana and requested a drug dog. At the vehicle, Morris asked the officer why he was pulled over, and the patrol officer told Morris that it was because Morris' vehicle's tires had crossed over the solid white line.

Subsequently, a canine officer and his drug dog, Turk, responded to the scene, along with a third officer. Turk hit upon a purse that was on the passenger floorboard of Morris' vehicle; a search of the purse revealed nearly one-half pound of marijuana. At some time during the stop, Morris informed the patrol officer that Morris was on probation, and the patrol officer called a probation officer. After Morris and the passenger in his vehicle were arrested, the State charged Morris with felony possession of marijuana with the intent to deliver, Idaho Code § 37-2732(a).[1]

Before trial, Morris filed a motion to suppress in the district court, contending that the officer lacked reasonable suspicion to stop Morris. The district court conducted a suppression hearing at which the patrol officer, canine officer, probation officer, and Morris testified. In a written decision, the district court denied the motion to suppress, determining that the patrol officer had reasonable suspicion to stop Morris. However, in its written decision, the district court expressed concern with the veracity of the patrol officer's testimony, even though it eventually found him credible. The case proceeded to trial where a jury found Morris guilty of a misdemeanor, the lesser included offense of possession of marijuana, and the court sentenced Morris. Morris now appeals the denial of his motion to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

---

[1] The passenger is not a party to this appeal.

2

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

On appeal, this Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

## III.

## ANALYSIS

On appeal, Morris argues that the district court erred by denying his motion to suppress. Specifically, Morris asserts that the district court's factual finding concerning Morris' vehicle's tires crossing the solid white line was not supported by substantial evidence. Morris also contends that the officer lacked reasonable suspicion of criminal activity when the officer initiated the traffic stop.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law

3

enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

## A.     Factual Finding

The district court, in deciding whether Morris' vehicle's tires crossed the solid white line, was tasked with determining whether the officer's testimony was credible. The district court noted that there were two areas in which the patrol officer's testimony "was demonstrably inaccurate." Despite these concerns, the district court found the patrol officer's testimony regarding Morris' vehicle's tires crossing over the solid white line credible. The court considered its observation of the patrol officer's demeanor while testifying, the officer's testimony that he followed Morris looking for additional traffic violations, and the fact that the officer told Morris at the time of the stop that the officer had pulled Morris over for crossing the solid white line.

On appeal, Morris phrases his argument as follows: "[Morris] disagrees with the court's determination that there was substantial evidence upon which [the patrol officer] could be deemed a credible witness." However, the real issue concerns whether the factual finding of the court that Morris' vehicle's tires had crossed the white line, after determining that the officer's testimony was credible, is supported by substantial evidence.

To start, we reiterate that decisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are within the discretion of the trial court. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). This is because the trial court is in a better position than the appellate court to weigh the demeanor, credibility, and testimony of witnesses. *State v. Munoz*, 149 Idaho 121, 128, 233 P.3d 52, 59 (2010).

In this case, there was substantial evidence for the district court to find that Morris' vehicle's tires had crossed the white line. The patrol officer provided direct evidence by relaying that he saw, from a distance of a few car lengths, Morris' vehicle's tires completely cross over the solid white line separating Morris' lane from a bicycle lane or parking area. This direct evidence was corroborated by Morris acknowledging that the patrol officer did inform him at the time of the stop that Morris was pulled over because his vehicle's tires had crossed the white line. Ultimately, the district court had the power to assess the credibility of the officer, which it did, and there was substantial evidence supporting the court's finding that Morris' vehicle's tires crossed the solid white line.

4

**B.      Reasonable Suspicion**

After finding that the patrol officer witnessed Morris' vehicle's tires cross the solid white line, the district court determined that there was reasonable suspicion for the officer to initiate a traffic stop, as the officer had witnessed a traffic violation under either I.C. § 49-630 or I.C. § 49-637.  The district court specifically determined that whether Morris' vehicle's tires crossed a line demarcating a bike path or a parking area, he had committed a traffic violation under either statute.  On appeal, Morris argues that his vehicle's tires crossing over the white line did not give rise to reasonable suspicion that Morris had committed a traffic violation under I.C. § 49-637(1) because the "as nearly as practicable" qualifier in that section widens the possible circumstances where a lane deviation may not amount to an infraction.  Because our analysis of I.C. § 49-637(1) is dispositive, we need not address Morris' arguments concerning I.C. § 49-630.

We begin by noting that in order to initiate a traffic stop, an officer must have reasonable suspicion that *some criminal activity* is afoot.  *State v. Perez-Jungo*, 156 Idaho 609, 615, 329 P.3d 391, 397 (Ct. App. 2014); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (explaining that for traffic stops, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot") (internal quotation marks omitted).  "[R]easonable suspicion does not require a belief that any *specific* criminal activity is afoot to justify an investigative detention."  *Perez-Jungo*, 156 Idaho at 615, 329 P.3d at 397.  In this case, the only factual basis determined by the district court for stopping Morris was the fact Morris' vehicle's tires had crossed the solid white line for two to three seconds.

Under I.C. § 49-637(1), when a highway is divided into two or more clearly marked lanes for traffic, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." The "as nearly as practicable" qualifier in I.C. § 49-637(1), by its plain language, recognizes that the driver must stay in the driver's lane where feasible.  This is because the use of "practicable" is unambiguous, and practicable is defined as "feasible in the circumstances," BLACK'S LAW DICTIONARY 1172 (6th ed. 1990).  Thus, where circumstances make it no longer feasible to drive in one's lane (e.g., a large boulder in the driver's lane), the driver is permitted to temporarily leave the driver's lane, where it is safe to do so, until it is feasible to drive in the driver's original lane.

5

Here, Morris' lane was marked on the left with a yellow line and was marked on the right with a solid white line. Thus, when Morris' vehicle's tires completely crossed the solid white line, Morris's vehicle had left its lane and entered into either a bicycle lane or a parking area. *See* I.C. § 49-121(4) (defining a lane as meaning "that portion of the roadway for movement of a single line of vehicles"). In either event, Morris' vehicle left its lane. Furthermore, at the time the vehicle's tires crossed the line, neither the officer nor Morris perceived a circumstance that would have required the vehicle to cross the line; that is, there was not a circumstance that would have made it infeasible to drive in the lane. Thus, Morris violated I.C. § 49-637(1).

Morris suggests that his crossing the white line fell within a range of normal driving behavior, citing *State v. Emory*, 119 Idaho 661, 809 P.2d 522 (Ct. App. 1991), and hence could not create reasonable suspicion of unlawful driving. In *Emory*, this Court considered whether an officer had reasonable suspicion to stop Emory for driving under the influence. In our analysis, we explained that the evidence adduced by the officer "could just as easily be explained as conduct falling within the broad range of what can be described as normal driving behavior." *Id.* at 664, 809 P.2d at 525. In particular, the officer witnessed Emory's vehicle not move for a few seconds after a light turned green, correctly proceed through another green light, and drive straight down a street, although close to parked cars. *Id.* at 662, 809 P.2d at 523. In short, the officer saw nothing that would give rise to reasonable suspicion that the driver was intoxicated. *Id.* at 664, 809 P.2d at 525 ("Here, the officer lacked objective facts from which to infer that Emory was engaged in criminal activity."). *Emory* did not create a "normal driving behavior" exception to traffic laws. We merely used the phrase to denote that the officer had not seen any activity that would support reasonable suspicion that the driver was under the influence of an intoxicant.

In contrast to *Emory*, the patrol officer witnessed Morris leave his lane when there was no circumstance that would have made it infeasible to drive in Morris' lane. At this point, the patrol officer had reasonable suspicion of criminal activity in that he had witnessed Morris commit a traffic violation.

## IV.

## CONCLUSION

The district court's finding that Morris' vehicle's tires had crossed the solid white line, after crediting the patrol officer's testimony, was supported by substantial evidence. In addition,

6

the patrol officer had reasonable suspicion to believe that some criminal activity was afoot, because Morris violated I.C. § 49-637(1). Accordingly, we affirm Morris' judgment of conviction because the district court correctly denied the motion to suppress.

Chief Judge MELANSON and Judge LANSING, **CONCUR**.