IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 44060

| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 362 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 9, 2017 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT BRYON DIXON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.
_____

GRATTON, Chief Judge

Robert Bryon Dixon appeals from his conviction for possession of a controlled substance. Idaho Code § 37-2732(c). Dixon asserts that the district court erred by denying his motion to suppress. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

An officer observed Dixon's car drift over the center dividing line of two lanes designated for westbound traffic. The officer testified that Dixon's car straddled the line for two to three seconds before returning to its own lane of travel. Dixon never activated the turn signals. The officer initiated a traffic stop for violation of Idaho traffic laws. While the officer completed the traffic investigation, another officer with a drug-detection canine arrived on scene. That officer located a methamphetamine pipe on Dixon's person. Thereafter, the canine alerted

1

on Dixon's vehicle and multiple controlled substances and paraphernalia were found. Dixon was arrested and subsequently charged with three counts of felony possession of a controlled substance, one count of misdemeanor possession of a controlled substance, one count of possession of drug paraphernalia, and a persistent violator enhancement.

Dixon filed a motion to suppress all evidence obtained after the traffic stop. He asserted that the officer did not have reasonable suspicion of a traffic violation. The district court denied the motion, finding that the testifying officer was credible and that Dixon's conduct--drifting over the lane marker for two or three seconds without signaling--violated I.C. § 49-637(1), giving the officer reasonable suspicion of a traffic violation.

Dixon entered a conditional guilty plea to possession of methamphetamine, reserving the right to appeal the denial of his motion to suppress. Dixon timely appeals.

## II.

## ANALYSIS

Dixon argues that the traffic stop was not justified under I.C. § 49-637(1), and seeks to suppress all evidence obtained after the traffic stop. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than

probable cause but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

The district court found Dixon operated his vehicle in such a manner that "the left front and rear tires went over the dotted line marker for two to three seconds without signaling." Dixon does not challenge this finding, but argues that the officer did not have reasonable suspicion to make the stop because his movement did not violate I.C. § 49-637(1). Idaho Code Section 49-637(1) states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety." Dixon avers that a driver does not violate I.C. § 49-367(1) every time he fails to remain in a single lane on a multi-lane highway. Dixon points to the phrase "as nearly as practicable" in support of his contention that the statute "encompasses a recognition that it is not always practicable to stay precisely in one's lane of travel." Further, Dixon asserts there is no evidence that his movement was not made with safety.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id.* Constructions of an ambiguous

statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

The practicability language in the statute does not excuse drivers from driving in one's own lane. Rather, it instructs that the driver must stay in the driver's lane where feasible. Although not cited by the parties, the facts of this case are nearly identical to those in *State v. Morris*, 159 Idaho 651, 655, 365 P.3d 407, 411 (Ct. App. 2015). In *Morris*, as here, the officer observed Morris's vehicle tires cross the white line for two or three seconds. *Id.* at 653, 365 P.3d at 409. Again, as here, Morris argued that the "as nearly as practical" language widens the circumstances where a lane deviation may not amount to reasonable suspicion of a lane infraction. We disagreed, stating:

> The "as nearly as practicable" qualifier in I.C. § 49-637(1), by its plain language, recognizes that the driver must stay in the driver's lane where feasible. This is because the use of "practicable" is unambiguous, and practicable is defined as "feasible in the circumstances," BLACK'S LAW DICTIONARY 1172 (6th ed. 1990). Thus, where circumstances make it no longer feasible to drive in one's lane (e.g., a large boulder in the driver's lane), the driver is permitted to temporarily leave the driver's lane, where it is safe to do so, until it is feasible to drive in the driver's original lane.

*Morris*, 159 Idaho at 655, 365 P.3d at 411. We further noted that there was no evidence from the officer or Morris of a circumstance that would have "required the vehicle to cross the line; that is, there was not a circumstance that would have made it infeasible to drive in the lane. Thus, Morris violated I.C. § 49-637(1)." *Morris*, 159 Idaho at 656, 356 P.3d at 412. The record here does not demonstrate, nor does Dixon suggest, that something beyond his control prevented him from staying in his own lane. Thus, there was not a circumstance that would have made it infeasible for him to stay in the lane.[1]

Dixon attempts to take the argument one step further. That is, Dixon argues the State must demonstrate that the crossing of the line "either could not, or was not, made with safety." We disagree. First, the statute requires that the vehicle stay in its lane of travel, but certainly contemplates that the driver may determine to change lanes, when safe to do so (which would require signaling, I.C. § 49-808). Alternatively, "where circumstances make it no longer feasible

---

[1] In conjunction with the "practicality" argument, Morris argued that crossing the line fell within a range of normal driving behavior and thus did not create reasonable suspicion, citing language from *State v. Emory*, 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App. 1991). *Morris*, 159 Idaho at 656, 365 P.3d at 412. In response, this Court noted that "*Emory* did not create a 'normal driving behavior' exception to traffic laws." *Id.*

to drive in one's lane (e.g., a large boulder in the driver's lane), the driver is permitted to temporarily leave the driver's lane, where it is safe to do so." *Morris*, 159 Idaho at 655, 365 P.3d at 411. As noted above, there is no evidence of such circumstances in the record. Finally, the statute prohibits leaving the lane "until the driver has first ascertained that the movement can be made with safety." This does not require the officer to determine or the State to demonstrate that the movement was unsafe or what the driver ascertained before the movement was made. Dixon concedes that he drifted over the roadway's dividing line, the officer clearly had reasonable suspicion to stop him for a violation of I.C. § 49-637(1). Therefore, Dixon is not entitled to suppression of any evidence obtained after the traffic stop and the district court correctly denied Dixon's motion to suppress.

## III.
## CONCLUSION

The officer had reasonable suspicion to stop Dixon for a violation of I.C. § 49-637(1). The district court's order denying Dixon's motion to suppress is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.

5