**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49865**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: August 27, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **AMENDED OPINION** |
| v. | ) **THE COURT'S PRIOR OPINION** |
| | ) **DATED AUGUST 1, 2024,** |
| JEREMY SAUL COHEN, | ) **IS HEREBY AMENDED** |
| | ) |
| Defendant-Appellant. | ) **Melanie Gagnepain, Clerk** |
| | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Lynn G. Norton, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Jeremy Saul Cohen appeals from his judgment of conviction for felony driving under the influence (DUI), challenging the district court's denial of his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDRUAL BACKGROUND**

In September 2021, around 11:00 p.m., Officer Rudan stopped a vehicle driven by Cohen after he saw the vehicle drive partially into a bicycle lane. Upon contact with Cohen, Officer Rudan suspected he was intoxicated. After a few minutes, Cohen fled from the stop in his vehicle. Officer Rudan caught up to Cohen and arrested him. Following Cohen's arrest, officers found marijuana and a pipe in his vehicle during an inventory search. Later, Officer Rudan obtained a warrant for a blood draw, which showed Cohen's blood alcohol content exceeded the legal limit. The State charged Cohen with felony DUI (prior felony conviction within fifteen years),

1

possession of a controlled substance, possession of drug paraphernalia, resisting and obstructing an officer, and misdemeanor eluding.

Cohen filed a motion to suppress, arguing the officer lacked reasonable suspicion to conduct a traffic stop based on a violation of Idaho Code § 49-637(1) (failure to maintain lane). The district court denied the motion, holding that the officer had reasonable suspicion for the stop and, alternatively, even if the initial stop was not supported by reasonable suspicion, Cohen was not entitled to suppression based on the attenuation doctrine. Cohen entered a conditional guilty plea to felony DUI, I.C. § 18-8005(6), and retained the right to appeal the denial of his motion to suppress. The State dismissed the remaining charges. Cohen appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Cohen argues the district court erred by denying his motion to suppress evidence obtained after a traffic stop for his failure to maintain his lane of travel. Specifically, Cohen asserts Officer Rudan did not have reasonable suspicion for the traffic stop because Cohen did not commit a traffic infraction under I.C. § 49-637 when his vehicle's passenger tires crossed into the bicycle lane. Cohen further asserts his flight from the stop did not break the causal chain to sufficiently attenuate the discovery of drug evidence after his flight. The State argues that Officer Rudan had reasonable suspicion for the stop, both for crossing into the bicycle lane and for driving under the influence.[1]

---

[1] The district court declined to find that Officer Rudan had reasonable suspicion of driving under the influence for the stop. Because we hold that the officer had reasonable suspicion for

2

Alternatively, the State maintains that the district court correctly held that Cohen's flight from the stop attenuated any illegality of the stop and, therefore, suppression of the drugs found after the flight is unwarranted.

**A.      Reasonable Suspicion for the Traffic Stop**

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

The district court concluded that the officer had reasonable suspicion to stop Cohen for failing to maintain his lane in violation of I.C. § 49-637(1). The district court specifically found that Cohen drove northbound with both passenger-side tires of his vehicle over the bicycle lane line for approximately three seconds, then swerved to correct into the southbound lane with "no reasonable explanation" for doing so, such as a roadway hazard that would have prevented Cohen from staying within his lane. Analyzing relevant statutes and associated case law, the district court concluded that N.W. 8th Street is a "laned highway" with "four clearly-marked traffic lanes": one lane designated for motor vehicle traffic and one lane designated for bicycle traffic in each direction. The lane markings are reflected in State's Exhibit No. 2, below, which was admitted at the suppression hearing:

---

leaving the lane of travel, we need not reach the question of reasonable suspicion for driving under the influence.



The district court's findings and analysis support the conclusion that the traffic stop was based on reasonable suspicion that Cohen violated I.C. § 49-637(1).

Idaho Code § 49-637 states in relevant part:

Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

By its plain language, I.C. § 49-637(1) requires a vehicle to be driven, as nearly as practicable, entirely within a single lane when a highway has been divided into two or more clearly marked lanes for traffic. There is no dispute that Cohen was driving on such a highway. The dispute is whether Cohen driving into the bicycle lane means that he left his lane of travel. More specifically, the question is whether the bike lane is a separate lane of travel, such that its interior demarcation line constitutes the boundary of the automobile lane in which Cohen was travelling.

On appeal, Cohen argues *State v. Neal*, 159 Idaho 439, 362 P.3d 514 (2015) and *State v. Fuller*, 163 Idaho 585, 416 P.3d 957 (2018) are instructive. In *Neal*, the Idaho Supreme Court considered whether driving onto, but not over, a fog line was sufficient to constitute reasonable

suspicion of a violation of I.C. § 49-637(1). *Neal*, 159 Idaho at 442, 362 P.3d at 517. The Court held "that driving onto but not across the line marking the right edge of the road does not violate Idaho Code Section 49-637 and therefore the officer's stop . . . was not justified." *Neal*, 159 Idaho at 447, 362 P.3d at 522. In *Fuller*, the front passenger-side tire crossed the fog line once and Fuller did not have her turn signal on at the time. *Fuller*, 163 Idaho at 587, 416 P.3d at 959. The Court concluded that "an isolated incident of temporarily crossing the fog line . . . does not violate section 49-637(1)." *Fuller*, 163 Idaho at 590, 416 P.3d at 962.

This Court addressed both cases in *State v. Devan*, 168 Idaho 242, 482 P.3d 577 (Ct. App. 2020). We explained that "*Fuller* left open the possibility that law enforcement, and reviewing courts, could appropriately find that reasonable suspicion of a violation of I.C. § 49-637(1) may be based upon driving behavior relative to the fog line." *Devan*, 168 Idaho at 246, 482 P.3d 581. In *Devan*, the officer observed the defendant drive both passenger tires across the fog line, straddling the line for three to five seconds--approximately 100 yards and "encroaching on the shoulder of a roadway used by pedestrians and cyclists." *Id.* Additionally, there was no explanation for the driving pattern because the roadway was straight and unobstructed. *Id.* at 243, 482 P.3d at 578. This Court determined the conduct was distinguishable from *Neal* and *Fuller*, and sufficient to warrant a traffic stop, because the conduct was not isolated or temporary incidences. *Id.* at 246-47, 482 P.3d at 581-82.

In the end, the fog line cases are different in kind from this case as those decisions concluded that "the fog line, if present, does not serve to demarcate the boundary of the lane of travel." *Fuller*, 163 Idaho at 590, 416 P.3d at 962. *State v. Morris*, 159 Idaho 651, 365 P.3d 407 (Ct. App. 2015) is more instructive with respect to Cohen's conduct. In *Morris*, the defendant was traveling in a lane with a yellow line on the left and a solid white line on the right; abutting the lane on the right was either a street parking area or bicycle lane. *Id.* at 653, 365 P.3d at 409. The patrol officer observed the passenger-side tires on Morris' vehicle move right and completely cross over the solid white line for two to three seconds without any perceived circumstance that would have required the vehicle to cross the line. *Id.* This Court concluded that Morris' vehicle "left its lane" when it crossed the white line and entered into the designated bicycle lane or parking area, in violation of I.C. § 49-637(1). *Id.* at 655-56, 365 P.3d at 411-12.

The district court determined Cohen was driving on a "laned highway," as defined by I.C. § 49-113. The district court found the inner solid white line was "a 'lane marker,' 'lane barrier,'

5

or 'lane boundary,'" and that the line's "purpose was to delineate the separation of traffic lanes that had the same direction of travel, although one traffic lane was for motor vehicles and the other traffic lane was for bicycles." In other words, the inner and outer solid white lines created "a clearly marked lane for vehicular traffic designated exclusively for the use of bicycles."[2]

As noted, I.C. § 49-637(1) provides:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic . . . . A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

"Highway" includes "the entire width between the boundary lines of every way publicly maintained when any part is open to the use of the public for vehicular travel, with jurisdiction extending to the adjacent property line, including sidewalks, shoulders, berms and rights-of-way not intended for motorized traffic." I.C. § 49-109(4). A "laned highway" means "a highway which is divided into two (2) or more clearly marked lanes for vehicular traffic." I.C. § 49-113(1). "Roadway" refers to "that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of sidewalks, shoulders, berms and rights-of-way." I.C. § 49-119(19). "Traffic lane" or "lane of travel" means "that portion of the roadway for movement of a single line of vehicles." I.C. § 49-121(4). "Traffic" includes any "vehicles" while using any highway for purposes of travel. I.C. § 49-121(3). A "bicycle" is a vehicle. I.C. § 49-103(1).

Cohen acknowledges that these definitions provide that a bicycle lane is as separate lane:

> Taking these definitions on their face, Mr. Cohen recognizes that a bicycle path could be considered a "clearly marked lane for traffic," I.C. § 49-637(1) (or, as stated in I.C. § 49-113(1), "marked lane for vehicular traffic") because a bicycle is considered a "vehicle." I.C. §§ 49-103(1), -123(2)(a). Accordingly, a vehicle fails to drive "within a single lane" when its tires cross into the bicycle path, a separate marked lane for vehicular traffic. (*See* R., pp.87-88, 93-98 (district court's interpretation).)[.]

---

[2] Further, the district court looked for guidance from the Idaho Transportation Board's "Manual on Uniform Traffic Control Devices for Streets and Highways" (MUTCD). IDAPA 39.03.41.004. Per that manual, white lane markings delineate either the "separation of traffic flows in the same direction" or "[t]he right-hand edge of the roadway." MUTCD § 3A.05.02. "A solid line discourages or prohibits crossing (depending on the specific application)." MUTCD § 3A.06.01.B. A bicycle lane is an example of a preferential lane. MUTCD § 3D.01.01. Pavement markings, such as the arrow and bicycle painted in the bicycle lane in this case, "designate that portion of the roadway for preferential use by bicyclists." Markings inform all road users of the restricted nature of the bicycle lane." MUTCD § 9C.04.01.

6

However, Cohen then argues, for the first time on appeal, that I.C. § 49-637 is ambiguous, asserting that "within a single lane" and whether a bicycle "path" is a "marked lane for traffic" is ambiguous. Specifically, Cohen argues that although a bicycle path may be a separate "lane" for bicycles, it is not a separate lane for *all* vehicular traffic. Cohen states that a motor vehicle clearly could not drive within the line markings for a bicycle "path." Cohen attempts to turn the analysis, as set forth above, from highway lanes to what is meant by a bicycle "path." Then, Cohen argues that Idaho Code Title 49's chapter on bicycles and pedestrians refers to bicycle "paths" and, therefore, a bicycle "path" is not necessarily a "laned highway" or a separate "traffic lane." Although this tortured statutory construction is without merit, Cohen did not raise the issue of ambiguity of I.C. § 49-713 in the district court. Moreover, Cohen never raised the Title 49 chapter on bicycles or pedestrians in any way. For this reason, the argument regarding the ambiguity of I.C. § 49-713 and the application of the Title 49 chapter on bicycles or pedestrians, has not been preserved on appeal. *See State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (explaining that appellate court review is limited to the evidence, theories, and arguments that were presented below).

The portion of the roadway designated for movement of a single line of vehicles, such as bicycles, constitutes a traffic lane or lane of travel. The inner and outer solid white lines created a separate lane of travel for bicycles, and I.C. § 49-637(1) prohibits a vehicle from driving in a separate lane of travel. The statute's purpose "is to prevent dangerous, unsafe movement out of a lane of traffic and into another lane of traffic." *Neal*, 159 Idaho at 447, 362 P.3d at 522. The bicycle lane is a separate lane for bicycles, not intended for automobiles. Cohen drove for three seconds into the bicycle lane, then swerved into the southbound lane. An automobile driving in a lane designated for bicycles is dangerous and unsafe. Therefore, the district court did not err in denying Cohen's motion to suppress because Officer Rudan was legally justified in conducting a traffic stop of Cohen's vehicle for failing to maintain his lane of travel in violation of I.C. § 49-637(1).

## B.     Attenuation

The district court further found that Cohen's flight broke the causal chain between any illegal stop and the drug evidence he sought to suppress. Thus, under the attenuation doctrine, even if there had been no reasonable suspicion for the stop, the evidence would not be suppressed. Under the federal constitution, applying the exclusionary rule and suppressing evidence is done

for two purposes: (1) to deter lawless conduct by law enforcement; and (2) to close the doors of the courts to any use of evidence unconstitutionally obtained. *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). The attenuation doctrine analyzes situations where there is some Fourth Amendment violation and the court must determine whether the resulting evidence was obtained by exploitation of that illegality or, instead, by means sufficiently attenuated from that illegality such that the taint of the illegality is purged. *See Brown v. Illinois*, 422 U.S. 590, 602 (1975). Thus, the attenuation doctrine permits the use of evidence that would normally be suppressed as fruit of police misconduct if the causal chain between the misconduct and the discovery of the evidence has been sufficiently attenuated. *Nardone v. United States*, 308 U.S. 338, 341 (1939); *State v. Hoak*, 107 Idaho 742, 749, 692 P.2d 1174, 1181 (1984). In applying the attenuation doctrine, the test is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488. The Idaho Supreme Court has employed the three-factor test from *Brown* to determine attenuation: (1) the elapsed time between the misconduct and the acquisition of the evidence; (2) the occurrence of intervening circumstances; and (3) the flagrancy and purpose of the police misconduct. *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). The district court held that the factors in *Page* weighed in favor of finding the evidence was seized legally under the attenuation doctrine. We agree.

The first factor, the elapsed time, favors attenuation when "substantial time" has passed between police misconduct and the discovery of evidence. *State v. Fairchild*, 164 Idaho 336, 347, 429 P.3d 877, 888 (Ct. App. 2018). Here, once Corporal Rudan approached the vehicle, he immediately detected the odor of alcohol coming from Cohen. Cohen fled while Corporal Rudan was running a records check in his patrol vehicle. Because a substantial amount of time did not pass, this factor weighs in favor of Cohen.

The second factor, the occurrence of intervening circumstances, is contested by the parties. Cohen acknowledges that numerous other jurisdictions have held that a defendant's commission of a new crime during flight or flight that creates a risk to the public can break the chain for subsequently discovered evidence. Nonetheless, Cohen argues that his flight was not an intervening circumstance because he would not have fled (or committed the additional offenses of

8

felony resisting and obstructing an officer and misdemeanor eluding) but for the initial illegal traffic stop.[3]

However, it is well established that an individual has no underlying right to resist an officer's attempt to peaceably seize that person; an individual may not use force to resist a peaceable arrest, even if the arrest is illegal under the circumstances. *State v. Lusby*, 146 Idaho 506, 509, 198 P.3d 735, 738 (Ct. App. 2008). Thus, violent resistance constitutes an intervening circumstance. *See id*. at 509-10, 198 P.3d at 738-39. Likewise, the commission of a new crime can constitute an intervening circumstance. *See State v. Schrecengost*, 134 Idaho 547, 550, 6 P.3d 403, 406 (Ct. App. 2000) (defendant's destruction of seized contraband was an intervening circumstance that "strongly militate[d] against suppression"); *see also Lusby*, 146 Idaho at 509-10, 198 P.3d at 738-39 (defendant's battery on an officer was an intervening circumstance). Further, the Ninth Circuit has recognized a defendant's flight as an intervening event that sufficiently purges the taint of an initial unlawful seizure. *See United States v. McClendon*, 713 F.3d 1211, 1218 (9th Cir. 2013) ("McClendon's act of walking away from the police after the police made it clear that they were trying to arrest him also was an intervening event that purged any taint from the prior backpack search."). Fleeing from a traffic stop is an attenuating circumstance. Moreover, Cohen's flight constituted a new and independent crime attenuated from the original traffic stop.

While Corporal Rudan was running a records check in his patrol vehicle, Cohen fled the traffic stop. Cohen continued to drive for three blocks without pulling over, despite Corporal Rudan pursuing him with lights and sirens. Cohen's flight and refusal to stop despite the use of lights and sirens both put the public at risk and constituted new independent crimes. Even if Cohen thought the initial detention was unlawful for lack of reasonable suspicion, the appropriate response would have been to remain for the duration of the detention and later challenge the initial stop in court. *See State v. Zuniga*, 143 Idaho 431, 436-37, 146 P.3d 697, 702-03 (Ct. App. 2006). However, because Cohen fled, his actions were an intervening circumstance that purged the taint of any unlawful seizure.

---

[3] Cohen's argument that he would not have fled but for the illegal stop is unpersuasive. Cohen, who was intoxicated, would have had to have known that the officer had no basis for the stop. This presumes he knows the traffic laws related to lines and lanes and was, in that state, able to make the determination that the stop was illegal before deciding to flee.

Lastly, factor three is the flagrancy and purpose of the improper law enforcement action. Corporal Rudan's conduct was not flagrant, nor was his purpose improper. Corporal Rudan witnessed Cohen driving into the bike lane and testified that he also suspected Cohen was an impaired driver.

The evidence discovered during Cohen's flight and commission of an independent crime was not obtained through any exploitation of the initial traffic stop. It was a result of Cohen's acts of free will--fleeing the traffic stop and eluding Corporal Rudan. Therefore, even if the officer did not have reasonable suspicion for the initial stop, the evidence discovered as a result of Cohen's flight and subsequent arrest may be admitted pursuant to the attenuation doctrine.

**IV.**

**CONCLUSION**

The district court correctly concluded that the officer had reasonable suspicion to stop Cohen because his driving behavior constituted a violation of I.C. § 49-637(1). Further, based on the doctrine of attenuation, even if the officer lacked reasonable suspicion for the traffic stop, the evidence was legally seized. Thus, Cohen has failed to show that the district court erred in denying his motion to suppress. Accordingly, Cohen's judgment of conviction for felony DUI is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.